UNITED STATES of America

v.

James R. HOFFA, Thomas Ewing Parks, Larry Campbell, and Ewing King.

Crim. No. 11989.

United States District Court
E. D. Tennessee, S. D.

Jan. 2, 1970.

Robert J. Rosthal, Michael T. Epstein, William O. Bittman, Austin Mittler, Daniel Schultz, Theodore George Gilinsky, U. S. Dept. of Justice, Washington, D. C., John Bowers, U. S. Atty., Chattanooga, Tenn., for the United States.

Morris A. Shenker, St. Louis, Mo., Daniel B. Maher, Washington, D. C., defendant for James R. Hoffa.

Jacques M. Schiffer, Rockville Centre, N. Y., for defendant Thomas Ewing Parks.

Cecil D. Branstetter, Nashville, Tenn., for defendant Larry Campbell.

Harold E. Brown, Chattanooga, Tenn., P. D. Maktos, Washington, D. C., for defendant Ewing King.

## OPINION

FRANK W. WILSON, District Judge.

The defendants, James R. Hoffa, Thomas Ewing Parks, Larry Campbell, and Ewing King, were convicted on March 4, 1964, of willfully endeavoring to influence, intimidate, and impede jurors in the discharge of their duties, in violation of the Federal Obstruction of Justice Statute (18 U.S.C. § 1503). The subsequent history of this litigation is set forth in a footnote.[1] Suffice it here to say that the conviction of each defendant was affirmed by the Court of Appeals and by the United States Supreme Court and the defendants were ordered into custody to serve their respective sentences. Each defendant has now completed serving his sentence other than the defendant Hoffa.

The case is presently before the Court upon the defendants' fourth motion for a new trial. The motion was originally filed in this court upon February 28, 1967, one day following the action of the United States Supreme Court in affirming the defendants' convictions and in denying a rehearing thereon. The defendants' fourth motion alleged that the defendants had obtained newly discovered evidence that they and their attorneys were subjected to unlawful surveillance by government agents by means of wiretapping, electronic eavesdropping, or other intrusions both prior to and during the trial in which they were convicted. The allegations of the motion being denied by the Government, the Court set an evidentiary hearing. Upon the date of the evidentiary hearing, however, counsel for the defendants declined to proceed, advising the Court that as a matter of legal ethics they did not feel that they could proceed with the evidentiary hearing, nor, as a matter of obligation to their clients, did they feel that they could disclose unto the Court the reasons for so declining to proceed. The Court thereupon overruled the fourth motion for new trial upon the default of the defendants and upon the record before the Court. United States v. Hoffa, D.C., 268 F.Supp. 732 (1967). No appeal was taken by the defendant King from the order of this Court denying the fourth motion for new trial. The other defendants did appeal. The Court of Appeals affirmed the action of this Court in denying the fourth motion for new trial. United States v. Hoffa, 6 Cir., 398 F.2d 291 (1968). A petition for certiorari was then filed by the defendants Hoffa, Parks and Campbell. While this petition was pending before the United States Supreme

---

1. The initial motion for new trial, filed March 10, 1964, was overruled. On appeal the conviction of each defendant and the denial of their first motion for new trial was affirmed. United States v. Hoffa, 349 F.2d 20; affirmed 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), rehearing denied February 27, 1967, 386 U.S. 940, 87 S.Ct. 970, 17 L.Ed.2d 880 (1967).

A second motion for a new trial was filed on March 18, 1964, alleging newly discovered evidence. This motion was denied. United States v. Hoffa, 247 F.Supp. 692 (1965), and the denial was affirmed on appeal 376 F.2d 1020 (1967), cert. denied 389 U.S. 859, 88 S.Ct. 102, 19 L.Ed.2d 124 (1967).

A third motion for a new trial, alleging newly discovered evidence, was filed September 1, 1965. This motion was denied. United States v. Hoffa, 247 F.Supp. 692 at 698 (1965); see also 245 F.Supp. 772 (1965). The denial of the third motion was affirmed on appeal. United States v. Hoffa, 382 F.2d 856 (1967) cert. denied 390 U.S. 924, 88 S.Ct. 854, 19 L.Ed.2d 984 (1968).

The history of the fourth motion for a new trial is recited in the body of this opinion.

Court, and in response to the petition, the Solicitor General of the United States made the following representation unto that Court:

"In light of this Court's decision in *Kolod*, we wish to disclose to the Court that although none of these petitioners was ever the subject of electronic surveillance directed against him, two of the petitioners did participate in conversations which were monitored during the course of electronic surveillance directed against others. (Brief for U. S. in opp. # 546 O.T. 1968)"

Upon this disclosure being made by the Government, the Supreme Court granted the petition for certiorari, set aside the judgment of the Court of Appeals, and remanded the case to this Court. See Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969). The directions on remand, as stated in the *Giordano* case, were:

" * * * The judgments of the Courts of Appeals in these cases are vacated, and the cases remanded to the respective District Courts for further proceedings in conformity with Alderman v. United States, Ivanov v. United States, and Butenko v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176. It is not evident from the records in some of these cases whether the surveillances at issue were unlawful. It may be that the overhearings in some instances were not achieved by trespass, see Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248, and Kaiser v. New York, 394 U.S. 280, 89 S.Ct. 1044, 22 L.Ed.2d 274, or for some other reasons were not unlawful. As we held in Alderman, Ivanov, and Butenko, 37 U.S.L.W., at 4190, n. 3, 22 L.Ed.2d at 184, 'the District Court must develop the relevant facts and decide if the Government's electronic surveillance was unlawful.' Of course, a finding by the District Court that the surveillance was lawful would make disclosure and further proceedings unnecessary. Similarly, it is not clear that each petitioner has standing to assert the illegality of the surveillance or of the introduction of its fruits. As in Alderman, Ivanov, and Butenko, these issues are to be resolved by the District Courts in the first instance."

Turning to the case of Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176, for further guidance on this remand, the record there reveals that the Government first disclosed in the United States Supreme Court that it had engaged in electronic surveillance of the defendants. Concluding that an issue might exist as to whether such electronic surveillance violated the search and seizure provisions of the Fourth Amendment and that, if so, a further issue might exist as to whether any evidence so obtained tainted the defendants' trials, the Supreme Court remanded the case of each defendant to the District Court for determination of these issues. The Court defined the issues for determination on remand in the following language:

"The judgment(s) * * * are vacated, and each of the cases is remanded to the District Court for further proceedings consistent with this opinion, that is, for a hearing, findings, and conclusions (1) on the question of whether with respect to any petitioner there was electronic surveillance which violated his Fourth Amendment rights, and (2) if there was such surveillance with respect to any petitioner, on the nature and relevance to his conviction of any conversations which may have been overheard through that surveillance."

■ In the light of the directions in *Giordano* and in *Alderman*, it is appropriate at this point to delineate certain of the guidelines provided by the Supreme Court for conducting proceedings of this nature. The Court does not here propose to undertake a general discussion of the developments in the law of

searches and seizures, beginning with Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944, 66 A.L.R. 376 (1928), which have resulted in wire-tapping, electronic surveillance and eavesdropping being considered a form of search and seizure subject to the Fourth Amendment limitations.[2] Suffice it to say that the present state of the law on the subject is such that evidence obtained by the Government as a result of electronic surveillance may not be used upon a trial when it has been obtained in violation of the Fourth Amendment rights of an accused, and a conviction obtained as a result of the use of such evidence must be set aside and a new trial granted.

██ Initially it should be noted that since the surveillances involved in this case occurred prior to the decision of Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the rule of that case rendering all electronic eavesdropping upon private conversations within the reach of the search and seizure provisions of the Fourth Amendment would have no application. See Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); Kaiser v. New York, 394 U.S. 280, 89 S.Ct. 1044, 22 L.Ed.2d 274 (1969). See also Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1164, 22 L.Ed.2d 297 (1969). Rather, the legality or illegality of any surveillance here brought to light must be judged by the pre-Katz rule of trespass or physical intrusion. See Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944; Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322. Accordingly, only such electronic surveillance as may be shown to have been conducted by means of a trespass or a physical intrusion by government agents could be found to be within the Fourth Amendment limitations.

██ A further guideline was established in *Alderman* wherein the Court held that any accused would be entitled to suppression of government evidence originating in electronic surveillance violating his own Fourth Amendment rights to be free of unreasonable searches and seizures and "such violation would occur if the United States unlawfully overheard conversations of a petitioner himself or conversations occurring on his premises, whether or not he was present or participated in those conversations." Thus, the Court will here be concerned both with the overhearings of any defendant and with overhearings upon the premises of any defendant, even though the defendant did not participate in the conversations and even though he was absent at the time.

██ Additional guidelines laid down in *Alderman* relate to the standing of any particular defendant to object to evidence obtained by electronic surveillance. Not every defendant is entitled to object, even though surveillance evidence may have been obtained by the Government in violation of a co-defendant's Fourth Amendment rights. The rule in this regard is stated thus in *Alderman*:

"The established principal is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by

---

**2.** For a history of the developments in this respect see Shapiro, "Wiretapping and Eavesdropping: A Case Analysis," 36 Tenn.L.Rev. 362 (1969). See also Western, "The Wiretapping Problem: An Analysis and A Legislative Proposal," 52 Col. L.Rev. 165 (1952); Dash, "The Eavesdroppers," (1959); Katzenbach, "An Approach to the Problems of Wiretapping," 32 F.R.D. 108 (1963); Schwartz, "Electronic Eavesdropping—What the Supreme Court Did Not Do," 4 Criminal Law Bulletin 83 (1968); Sullivan, "Wiretapping and Eavesdropping: A Review of the Criminal Law," 18 Hastings Law Journal 175 (1959); Davis, "Electronic Surveillance and the Right of Privacy," 27 Mont. L.Rev. 173 (1966); Williams and Keenan, "Wiretapping and Eavesdropping: A Compilation of Federal and State Statutes with Annotations and Bibliographic References" (1966).

the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing. * * *

* * * * * *

"In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else. * * *

" * * * We adhere to these cases and to the general rule that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted."

■ Once an electronic surveillance which was obtained in violation of a defendant's Fourth Amendment rights has been identified as being available to or in possession of the Government, the issue then arises as to the procedure to be followed in determining its relevance to a defendant's conviction. *Alderman* establishes the rule that in such cases relevance is to be determined not by the Government, nor by an in camera inspection by the Court, but rather by making disclosure of the overhearings to the particular defendant whose rights are involved. As stated by the Court in *Alderman*, " * * * We can conclude that surveillance records as to which any petitioner has standing to object should be turned over to him without being screened in camera by the trial judge." After pointing out that a defendant would have the burden of going forward with specific evidence that his conviction was tainted by the illegal overhearing, the Court concluded:

"With this task ahead of him, and if the hearings are to be more than a formality and the petitioners not left entirely to reliance on government testimony, there should be turned over to them the records of those overheard conversations which the Government was not entitled to use in building its case against them."

As regards the procedure to be followed in identifying electronically surveilled materials within the possession of the Government and in making disclosure thereof, the Court gives the following practical advice in Alderman:

"None of this means that any petitioner would have an unlimited license to rummage in the files of the Department of Justice. Armed with specific records of overheard conversations and with the right to cross-examine the appropriate officials in regard to the connection between those records and the case made against him, a petitioner may need or be entitled to nothing else. Whether this is the case or not must be left to the informed discretion, good sense and fairness of the trial judge."

■ Finally, should the Government be found to have possessed information at or prior to the time of the trial which was obtained by electronic surveillance conducted in violation of a defendant's Fourth Amendment rights, the ultimate question facing the Court in a proceeding of this nature is to determine whether or not the defendant's conviction was tainted by the use of the illegally obtained evidence. In making this determination the defendant will have the burden of going forward with specific evidence demonstrating taint, but the ultimate burden of persuasion rests upon the Government. The rule in this regard is stated in Alderman as follows:

"The United States concedes that when an illegal search has come to light, it has the ultimate burden of persuasion to show that its evidence is untainted. But at the same time petitioners acknowledge that they must go forward with specific evidence demonstrating taint."

■ In accordance with the order of remand in the *Giordano* case and the guidelines established in the *Alderman* case, a hearing was held in this case in

which numerous witnesses were examined and cross-examined by the parties and voluminous records were introduced. As instructed in *Alderman*, the Court must now proceed to make its findings and conclusions with respect to each defendant upon the following matters: (1) the question of whether with respect to any defendant there was electronic surveillance which violated his Fourth Amendment rights and (2) if there was such surveillance with respect to any defendant, whether any conversations so overheard bear any relevance to his conviction.

As initially filed, the defendants' fourth motion for a new trial made extensive and specific charges of illegal surveillance having been conducted by the Government both prior to and during the trial wherein the defendants were convicted. Numerous affidavits were filed in support of these charges. The Government, in their response, made specific denial of each allegation of surveillance in the defendants' motion, and supported their denials with a number of affidavits. As noted in the decision of this Court in overruling the defendants' fourth motion for new trial, United States v. Hoffa, D.C., 268 F.Supp. 732 (1967), the defendants defaulted in producing any evidence upon the initial evidentiary hearing upon their motion. Likewise, it should be noted that at the evidentiary hearing upon the present remand of the case, the defendants offered no evidence in support of any of the initial allegations in their motion. Rather, the hearing was directed exclusively to the disclosures made by the Government before the Supreme Court in regard to electronic surveillance of two of the defendants, and toward the surveillance of a third defendant as developed in the course of the evidentiary hearing.

As noted above, the Government made a disclosure before the Supreme Court that it had in its possession electronic overhearings of two of the defendants, but no disclosure was there made as to the identity of the two thus referred to. Upon the evidentiary hearing it develop-

ed that the two defendants so referred to by the Government were the defendants Hoffa and Campbell. In the course of the evidentiary hearing it was disclosed for the first time that the Government also had in its possession a recording of a conversation between the defendant King and one Grady Partin, one of the principal witnesses to testify for the Government on the trial of the case. As noted above, King made no appeal from the decision of this Court overruling the fourth motion for new trial and he accordingly was not before the Supreme Court at the time of the remand on that motion, but he did seek and was permitted to participate in the evidentiary hearing to the extent that any of his rights may be involved on this state of the record.

The evidentiary hearing upon this remand extended over a period of six trial days. In the course of the hearing, 33 witnesses were examined and cross-examined and voluminous records were filed. The witnesses included the principal government officials in charge of the prosecution of this case, numerous agents and officials of the Federal Bureau of Investigation, officials of the Internal Revenue Service and other witnesses. The exhibits include the records of all electronically monitored conversations referred to in the hearing, excerpts from grand jury minutes, and many normally confidential government files and records.

As a result of the hearing, it has been disclosed that the Government had in its possession during or prior to the trial of this case the following records obtained by electronic surveillance: (1) reports of telephone and radio telephone conversations in which the defendant Hoffa may have participated (Exhibits 5 and 7) (of these seven conversations four were obtained in the course of electronic surveillance conducted in Las Vegas, Nevada, and three were obtained in the course of electronic surveillance conducted in Detroit, Michigan); (2) reports of a number of radio telephone conversations in which the defendant

Campbell may have participated (Exhibits 6 and 13) (all of these were obtained in the course of electronic surveillance conducted in Detroit, Michigan); and (3) a report of an electronically taped conversation between the defendant King and one Grady Partin, a witness who testified on the trial for the Government. Other than the above three matters, it appears that the Government has no other reports or records of any kind involving electronic surveillance of any party defendant. The evidence reflects that there was no electronic surveillance or overhearings of any kind of the defendant Parks (nor of the co-defendants Tweel and Dorfman, who were acquitted upon the trial). The evidence likewise reflects that no premises of any defendant was ever the subject of electronic surveillance except with respect to one radio telephone conversation of the defendant Hoffa, as hereinafter noted.

### Hoffa Overhearings

Turning the Court's attention to the overhearings involving the defendant Hoffa, the record discloses that the Government has in its possession the logs of seven conversations obtained by electronic surveillance in which the defendant Hoffa may have been a party. The record of each conversation was made available unto the defendant in the Government's disclosure prior to the hearing and copies of the conversations were filed as exhibits at the hearing (Exhibit 5 and 7). Four of these conversations were obtained in the course of electronic surveillance conducted by the Federal Bureau of Investigation at the Executive Offices of two casinos in Las Vegas, Nevada. Three of the conversations were obtained in the course of Federal Bureau of Investigation monitoring of radio telephone conversations in Detroit, Michigan.

With regard to the Las Vegas conversations, the evidence reflects that in May of 1962 an F.B.I. agent installed a hidden microphone in the Executive Office of one Major Riddle at the Dunes Hotel in Las Vegas and in the Executive Office of one Moe Dalitz at the Desert Inn Motel in Las Vegas, these installations being made in the course of investigations directed at the aforesaid individuals and establishments. These microphones were installed under the desks in the said offices and permitted the monitoring of conversations occurring in the rooms where they were installed. The installations were made secretly by the F.B.I. and were therefore made in the course of a trespass. However, there was no tapping of any telephone lines, and, as regards telephone conversations, only the voice of the person in the room could be monitored and not that of the person on the other end of the telephone line. The F.B.I. monitored conversations over these two microphones from May 18, 1962, until August 15, 1963. Upon two occasions, Major Riddle spoke over the telephone with someone he identified as Hoffa. These conversations related to borrowing money to purchase an insurance company. A third conversation was a call from Hoffa making a reservation of rooms for Mr. Schiffer. The fourth conversation was a call from Moe Dalitz to "Jimmy", believed to be Jimmy Hoffa, and related to an insurance company matter.

With regard to the Las Vegas logs, it would appear clear that there was no Fourth Amendment right of the defendant Hoffa violated by the Government. While the surveillance was accomplished by means of trespass, no trespass was committed on the defendant's premises and no conversation of the defendant was ever overheard. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Moreover, there was nothing in the conversation having the remotest relationship to any person or any issue on trial in this case. The government prosecutors were not aware of the conversations at the time of the trial and the trial could not have been tainted by the surveillance.

With regard to the three Detroit conversations involving the defendant Hoffa and disclosed to have been overheard by the Government, the evidence reflects

that from July 31, 1961, to March 30, 1965, the F.B.I. monitored radio telephone conversations in Detroit in connection with an investigation directed toward the Teamsters Union in that city. It appears that the Teamsters Union had one or more mobile telephone units installed in automobiles used by union officials in the Detroit area. These units were tied into the telephone system by FM radio communication. Conversations to and from these mobile telephone units were monitored by the F.B.I. by means of a commercial type FM receiver installed at the F.B.I. offices in that city. A record or log of these conversations was kept. The Government disclosed that three conversations so monitored appeared to involve the defendant Hoffa as a party to the conversations. The full logs for the four-year period were read by the Court to verify that the three conversations disclosed were the only ones that appeared to involve the defendant Hoffa (Exhibit 8). These three conversations disclosed no matters of any consequence to this litigation, but rather, to the extent that they are comprehensible, appear to deal with wholly unrelated personal or union business.

It is accordingly likewise clear with regard to the Detroit overhearings that there was no Fourth Amendment right of the defendant Hoffa violated by the Government. There was no trespass committed by the Government in monitoring radio communications. The premises of the defendant was never the subject of monitoring except to the extent that one of the radio communications monitored involved a conversation from a mobile telephone to the defendant Hoffa while at his home. And finally, not only is there no relationship between any matters involved in the conversations and any matters in issue in this lawsuit, but it also affirmatively appears that the trial in this case was not in any way tainted by the matters overheard. The Court is accordingly of the opinion that the record on this hearing clearly establishes that the Government conducted no unlawful surveillance of the defend-

ant Hoffa and that no Fourth Amendment right of the said defendant was violated.

### Campbell Overhearings

As regards the defendant Campbell, the record reflects that the Government disclosed prior to the hearings that it had in its possession some 254 conversations in which Campbell appeared to be a party. The record of each such conversation was made available to the defendant before the hearing. Each of the conversations thus disclosed was overheard in the course of the monitoring of radio telephone communications in the Detroit Office of the Federal Bureau of Investigation. This was in the course of the same monitoring of FM radio communications discussed above by the Court in connection with the three conversations of the defendant Hoffa. As previously stated, the Court read the logs of all conversations monitored over a four-year period in order to verify that all conversations in which any defendant may have participated were disclosed (Exhibit 8). In the course of this search of the record, the Court found four additional conversations in which it appeared that the defendant Campbell may have been a party to the conversation. The logs of these additional conversations were likewise disclosed unto the defendant. None of the conversations involving the defendant Campbell so monitored by the Government bears any relevance to this case. Rather, they deal with local union business or matters personal to the defendant. There is a total absence of any showing that any matter so overheard by the Government played any part in the trial of this case or in any manner tainted the evidence used in the conviction of any defendant herein. On the contrary, it affirmatively appears from the record on this hearing that the Government conducted no unlawful surveillance of the defendant Campbell and that no Fourth Amendment right of the said defendant was violated.

### King Overhearings

Turning to the only remaining overhearing, that of the electronically taped conversation between the defendant King and the witness Partin, the existence of this tape was first disclosed in the course of the present hearing. As for the origin of this tape and the circumstances of its having been recorded, the record reflects that during the course of the Government's investigation in preparation for presenting criminal charges against the defendants, one Grady Partin, an associate of the defendant Hoffa and a local Teamsters official, had been cooperating with the Government in furnishing information against the defendants. As a part of this cooperation, Partin agreed to have a tape recorder installed in his automobile by government agents in anticipation of recording a conversation between himself and King. For this purpose, Partin made his automobile available to agents of the Federal Bureau of Investigation in Birmingham, Alabama, on May 7, 1963, and they installed a tape recorder in the automobile on that date. Partin then proceeded to Nashville, Tennessee, and had a conversation with King while in the automobile on May 8, 1963. With the recorder operating, the two men rode about Nashville and engaged in conversation for some 90 minutes. During a portion of this time they were out of the automobile while new tires were being installed. After letting King out of the automobile, Partin made the automobile available to F.B.I. agents in Nashville for removal of the tape and he then returned his automobile to Birmingham where the wiring was removed on May 10, 1963. An F.B.I. agent at Nashville attempted to transcribe the tape. Because of the overriding background noise and the extremely poor quality of the tape, he was able to decipher only rather limited portions of the conversation. His transcript of this was made available to the United States Attorney, who read it and then, according to his testimony, discarded it as being valueless. This transcript was filed in the record on the present hearing and made available to the defendants (Exhibits 1 and 12). Although it was testified that the original tape had been erased and reused, some time after the trial of this case, the Government had kept two copies of the tape and these were introduced into evidence (Exhibits 2 and 4). One of the tapes was then made available unto the defendants (Exhibit 4) and the defendant King audited the tape and made a transcript of his version of the contents.

The defendant's transcript of the recording is substantially the same as that made by the Government, with the defendant having managed to decipher some limited additional portions of the recording. The only portions of the recording which are decipherable and which appear to relate in any way to this case are those portions of the tape wherein the defendant King and the witness Partin speculate about possible witnesses, speculate as to whether any indictment will be returned and, if so, who may be indicted and engage in further conversation regarding an occasion when King, along with an associate, Oscar Pitts talked with a highway patrolman whose wife was serving on a jury trying the defendant Hoffa at the time.

With regard to the defendant King, it should first be noted that, technically speaking, he would have no standing before the Court in these proceedings as his conviction has been affirmed on appeal, he has served his sentence, and he has no motion or petition pending before this Court. As to him, the judgment of this Court denying the fourth motion for new trial became final when no appeal was taken from it by him. Not being before the Supreme Court at the time of the remand, the case was not remanded as to the defendant King. The time for filing any further motions for new trial in this case has now long since expired (Rule 33, Federal Rules of Criminal Procedure). Accordingly, the only manner in which the defendant King could now have standing to assert matters before the Court would

be by way of a petition for habeas corpus or a petition filed pursuant to § 2255, Title 28 U.S.C. Under such a petition he could assert only alleged errors of a constitutional or jurisdictional nature. Accordingly, to the extent that the defendant King might assert the matters now being complained of by a petition for habeas corpus or by a petition filed pursuant to § 2255, Title 28 U.S.C., the Court will consider the same.

■ To the extent that the defendant King complains of a violation of his Fourth Amendment rights to be free from illegal searches and seizures, it is apparent that the recorded conversation between Partin and King constituted no such violation, and this for several reasons. In the first place, it is apparent that the recording was made without any trespass or physical intrusion. Rather, the recording was a consensual recording made in the automobile of the witness Partin and with the full knowledge, cooperation and consent of Partin. Such a recording would not constitute a violation of King's Fourth Amendment rights. Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1951); Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); Osborn v. United States, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966), rehearing denied 386 U.S. 938, 87 S.Ct. 951, 17 L.Ed.2d 813. Furthermore, it is apparent that the recording and the information therein was neither used in the trial nor did it in any way taint the evidence that was used. The statements made by King in the recording, to the extent that they can be deciphered and to the extent that they were therefore available unto the Government, would appear to have no value, either for purposes of incriminating or for purposes of exculpating the defendant. The recording, to the extent that it provided information, provides no information that was not already known to the Government as reflected by the record upon the trial. It is clear that the recording

had nothing to do either with the indictment or the trial of any defendant, including the defendant King. The offenses for which the defendants were here convicted occurred during the course of a trial of the defendant Hoffa in the United States District Court at Nashville, Tennessee, often referred to as the "Test Fleet" trial, which trial occurred in October, November and December of 1962. The indictment in this case was returned upon May 9, 1963. The recording of the conversation between Partin and King was taken on May 8, 1963. Not only did Government witnesses testify that the recording was not used in any manner in gathering or presenting evidence to the grand jury or at any other stage of the trial, but the Court examined the minutes of the grand jury on the dates of May 8 and May 9, 1963, and verified the fact that there was no matter presented to the grand jury in any way related to the recording. Likewise, in verification that the recording was neither used itself, nor did it lead to any evidence used upon the trial, the record upon the trial reveals that the Government already had available to it before the date of the King-Partin recording, all of the evidence used by it on the trial regarding King, including the testimony of the F.B.I. agents who had observed King in November of 1962 at the time he engaged in the conversation with the highway patrolman, Paschal, the testimony of Oscar Pitts, who was with King at the time of the conversation with Paschal, the testimony of Paschal himself regarding the conversation with King, and the testimony of Partin, who reported on the King-Paschal conversation at or about the time in November 1962 when it occurred.

Having concluded that neither of the records in the possession of the Government obtained by electronic surveillance of the three defendants, Hoffa, Campbell and King, were obtained in violation of any defendant's rights under the Fourth Amendment, nor did they in any way taint the evidence used in the trial

of any defendant, the Court has now determined all issues upon which the case was remanded by the Supreme Court. However, in the course of the hearing the parties have raised new and additional matters regarding the recording of the conversation between the defendant King and the witness Partin.

■ In the first place, it is contended that the King-Partin recording violated the defendant King's Fifth Amendment right not to be compelled to testify against himself and his Sixth Amendment right to be represented by counsel. It would appear clear that this contention is without merit. The present case presents no matters that would fall within the rules announced in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Not only did this trial occur prior to the *Miranda* case, and the rules announced in *Miranda* have been held not to be retroactive, Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), but there was no custodial interrogation of the defendant King and there was no attempt by the Government to in any wise use the conversation. This Court's above finding that the recording did not in any wise taint the evidence used by the Government upon the trial would be equally as applicable to the defendant's Fifth and Sixth Amendment contentions as it would to his Fourth Amendment contention.

While under the particular circumstances of this case and under the reasoning announced in Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), in the unlikely event that the reasoning of that case were held to be retroactive, it does appear that the taping of the recording may have violated the Fifth Amendment right of the defendant King to refrain from giving evidence against himself in that previous to the recording King had been called before the grand jury and had asserted his Fifth Amendment right to refrain from testifying, there could be no error here involved in that the recording was not used by the Government, nor did it taint any evidence used by the Government.

■ It is next contended by all defendants that the Government's failure to disclose the King-Partin recording at the time of the trial denied each defendant the use of the recording in cross-examining the witness Partin, all in violation of each defendant's rights under the Jencks Act, Section 3500, Title 18 U.S.C. This contention is without merit for several reasons. In the first place, neither defendant would have any standing to first assert a matter of this nature at this time. As noted above with respect to the defendant King, the time for filing further motions for new trial has long since expired with respect to each defendant in the case. Rule 33, Federal Rules of Criminal Procedure. The present Jencks Act contention was not asserted by any defendant in his fourth motion for new trial. Rather, it is now being asserted for the first time by any defendant. At this time, and with regard to new matters, the defendants would at most be entitled to assert only such matters as could be asserted in a habeas corpus petition or in a petition filed pursuant to § 2255, Title 28 U.S.C. That is, he could assert only errors of a constitutional or jurisdictional nature. After a defendant has been convicted, his conviction affirmed on appeal, and after the time for filing further motions for a new trial has expired, he may assert only allegations of error that rise to the level of constitutional errors or jurisdictional errors. Problems regarding Jencks Act statements are certainly not of a jurisdictional nature. Neither are they of a constitutional nature. Rather, they are of a statutory nature. Jencks v. United States (1956), 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103; Palermo v. United States (1959), 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287. Such problems are not subject to be raised on a habeas corpus petition or a petition filed pursuant to § 2255, Title 28 U.S.C. United States v. Augenblick (1969), 393 U.S. 348, 89

S.Ct. 528, 21 L.Ed.2d 537; Black v. United States (C.A.9, 1959), 269 F.2d 38, cert. denied 361 U.S. 938, 80 S.Ct. 379, 4 L.Ed.2d 357; United States v. Gandia (C.A. 2, 1958), 255 F.2d 454.

■ In the second place, the King-Partin recording would not have constituted a statement subject to production under the Jencks Act. That Act refers to statements "made by a Government witness or prospective Government witness (other than the defendant) *to an agent of the Government*" (emphasis supplied) as being subject to production under its terms. The recorded conversation between King and Partin is not a statement "made to an agent of the government" and accordingly it would not be subject to production under § 3500, Title 18 U.S.C. United States v. Sopher (C.A. 7, 1966), 362 F.2d 523, cert. denied 385 U.S. 928, 87 S.Ct. 286, 17 L.Ed.2d 210. King was not a witness for the Government and Partin, in talking with him, was not talking with an agent of the Government.

■ Finally, in view of the limited value of any information contained in the recording, the extensive cross-examination of the witness Partin by counsel for each defendant, such cross-examination extending over one full week of the trial and taking up 1300 pages in the record (Tr. pp. 3460–4731), including extensive cross-examination in regard to all matters in any way touched upon in the recording, and in view of the entire record upon the trial, the Court is of the opinion that the non-disclosure of the recording at the time of the trial was at the very most harmless error beyond a reasonable doubt. Chapman v. California (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; Harrington v. California (1969), 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284.

The foregoing statement as to the harmless nature of any alleged error involved in the non-disclosure of the King-Partin recording would be equally applicable and likewise decisive of all remaining contentions of the defendants,

including the defendants' contention that the non-disclosure of each of the overhearings now disclosed would constitute a violation of the principles enunciated in Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. The Hoffa and Campbell overhearings are so clearly unrelated to anything pertinent to this case as to be devoid of any possible relevance. While portions of the King-Partin recording do relate to the case, they are neither of an incriminating nor an exculpating nature. The recording, if used in the trial, would at the very most have been of a purely cumulative nature. Nothing was said in the recording of the slightest relevance to the trial that was not testified to by witnesses in the trial, including both Partin and King. The only other possible use of the recording would have been for the cross-examination of the witness Partin. The extremely extensive cross-examination of this witness on all matters, including all matters touched upon in the recording, renders any possible error in the non-disclosure of the recording harmless beyond a reasonable doubt. This conclusion is further required by the extensive and overwhelming nature of the evidence of each defendant's guilt when the record is viewed as a whole.

The Court having concluded that no violation of any defendant's rights has been shown under the direction given by the United States Supreme Court in Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969) or in Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) or related cases, and that no error has been shown to exist in the non-disclosure of the matters now disclosed by the Government that would constitute any ground for setting aside the conviction or granting a new trial as to any defendant, all pending motions are overruled and the conviction and sentence heretofore imposed upon each defendant is affirmed.

An order will enter accordingly.