**UNITED STATES of America,
Appellee,**

v.

**John PALMIERI et al., Appellants.**

**Nos. 337, 359 and 362,**

**Dockets 71–1744, 71–1741 and 71–1743.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 10, 1971.

Decided Feb. 9, 1972.

Sigmund L. Miller, Bridgeport, Conn., for appellant Palmieri.

A. Jay Sprecher, East Haddam, Conn., for appellant Travisano.

Warren A. Luedecker, Bridgeport, Conn., for appellant Wisniewski.

Leslie Byelas, Asst. U. S. Atty., Bridgeport, Conn. (Stewart H. Jones, U. S. Atty., D. Conn., George F. McGunnigle, Jr., Asst. U. S. Atty., of counsel), for appellee.

Before ANDERSON, MULLIGAN and OAKES, Circuit Judges.

OAKES, Circuit Judge:

This appeal is from convictions in connection with an avaricious ($9,975 collected on a $5,000 loan for four months) loan-shark extortion of two small businessmen in Bridgeport, Connecticut.

All appellants were convicted on the count charging conspiracy to participate in the use of extortionate means, i. e., threatening use of violence, to collect the extension of credit. Appellants Wisniewski and Palmieri were also convicted on two substantive counts, one charging the making of an extortionate extension of credit (18 U.S.C. § 892; hereinafter the "making" count), and the other charging the use of extortionate means to collect an extension of credit (18 U.S.C. § 894; hereinafter the "collecting" count). Appellant Wisniewski doesn't argue sufficiency of the evidence; he claims that a front page newspaper story published during the trial prejudiced the jury and that $15,656.99 in cash taken from him on arrest and not shown to be connected with the charges here should be returned. The story described Wisniew-

ski's arrest during the trial for obstructing justice by bribing and threatening the government's chief witnesses, the extortion victims. That arrest was followed by the testimony of one Casey to the unsuccessful bribery and threats.

Appellant Palmieri doesn't argue sufficiency on the conspiracy or collecting counts but does on the making count. He also argues jury prejudice and makes the additional claim that Casey's testimony about Wisniewski, admitted only against Wisniewski, contained prejudicial hearsay concerning Palmieri and thus was inadmissible under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

Appellant Travisano argues insufficiency on the conspiracy count especially in light of his acquittal on the substantive counts; he also joins in the newspaper publicity argument and claims that the admission of certain testimony of Casey's was plain error as to him and violated his due process and sixth amendment rights.

The victims of the alleged extortion, Messrs. Suli and Secchiaroli, became partners in a floor covering business in Bridgeport eventually incorporated under the name of Town Floor Distributors, Inc. To secure Secchiaroli's interest in the business, he borrowed $5,000 from Wisniewski, a sometime auto salesman, who told him—even before the loan was consummated—that it "had to be paid back or else." The loan was consummated on December 31, 1969, in the office of Wisniewski's attorney (who tried the case and argued this appeal). By its terms the loan was for seven months, and although interest was not mentioned on the face of the note, it was understood by Suli and Secchiaroli to be $1,000 or 20 per cent. (Unless our mathematics is wrong even that is over 34 per cent per annum.) The partners decided they wanted to pay the loan in a hurry, however—as Secchiaroli testified,

"Las [Suli] was just as scared as I was" —and they tried to make payment with a $6,000 check on January 30, 1970. This check was purposely drawn on insufficient funds because the partners figured that "if the check bounced" they "would have to answer to the bank, which was a lot easier than answering to Mr. —."

In February 1970, Wisniewski informed Suli that $1,000 interest was owed for the month of January and telephoned several times during February for the payment. On February 16, 1970, the telephone calls were successful, for Suli paid Wisniewski $1,275 by check.

About a month later at the floor covering shop Wisniewski informed Suli that there was "another interest due on the loan" and that "[t]he people who lended the money, they want their money. They want the money repaid." That same afternoon "John," appellant Palmieri, came back to the shop with Wisniewski, and they demanded another interest payment; "John" in a "mad" tone of voice said it was his money, that he wanted to get paid and, as Secchiaroli testified, it must be paid "or he'd hang us from the rafters."[1] Wisniewski, good fellow that he was, clinched the argument, telling Suli that he was "a nice guy" and he didn't "want to see [him] get hurt." Secchiaroli sold $1,940 of floor tiles for $1,000 to pay Wisniewski, but on Suli's objection to this Secchiaroli gave the $1,000 to his own attorney to hold. Suli even had his partner charged with embezzlement, a charge which was *nolle prossed.*

Travisano entered the picture for the first time in early April when he went to Secchiaroli's house to ask him why the loan had not been paid, saying he "was there to check on it for someone" —"someone" in this connotation may have sounded ominous—and asking him what happened to the $1,000. When Secchiaroli told Travisano that the

---

1. The statute defines both an extortionate extension of credit and use of extortionate means as involving use or threats of use of "violence or other criminal means." 18 U.S.C. § 891(6), (7).

$1,000 was at the attorney's, Travisano didn't believe him and even accompanied the victim to the attorney's office, verified the fact and then telephoned Wisniewski to confirm that the attorney had the money. Thereafter Travisano placed collect telephone calls to Secchiaroli several times a day about the loan.

At the end of April all three appellants arrived at Town Floor Distributors. Wisniewski told the partners they now owed $8,700 because they were "behind" in their payments. The partners relinquished tile worth $8,700 at wholesale in payment of the debt, and Wisniewski, Palmieri and Travisano loaded it in a truck and removed it to Wisniewski's garage. Together with the previous payment of $1,275, this made up the total of $9,975 paid on the original $5,000 loan.

The foregoing demonstrates that there was ample evidence to justify Palmieri's conviction on the making as well as the collecting count. While the statute requires that in making an extortionate extension of credit there must be "at the time it is made" an understanding of the creditor and the debtor that delay or failure in repaying the loan "could result in the use of violence or other criminal means," 18 U.S.C. § 891(6), Wisniewski originally told Secchiaroli that "he couldn't make a decision right there," "he would have to talk to someone and let me know." Palmieri later let it be known that it was his money that had been loaned. Even before the making of the loan Wisniewski threatened repayment "or else." While Palmieri's name had not been mentioned on December 31, 1969, from his subsequent claim to ownership of the money lent and threats to hang the victims it could be inferred that he was a participant in the original extension of credit.

■ There is ample evidence of Travisano's participation—by telephone calls, the rather remarkable trip to Secchiaroli's lawyer's office and the telephone call placed there to Wisniewski, as well as his assistance in loading the tile to take it in satisfaction of the debt—to justify his conspiracy conviction. His suggestion on oral argument that he was merely being "friendly" to Suli and Secchiaroli would be risible if the charge were not so serious. With friends like Travisano, Suli and Secchiaroli had no need of enemies. Travisano's legal argument, however, that his acquittal on the substantive counts is inconsistent with his conviction on the conspiracy court, rises to a somewhat higher plane. It may have been that the jury thought there was insufficient evidence to show that he actually lent the money or shared in the proceeds, even though he helped collect them. Or the jury may well have thought that Travisano, without using threats of violence himself, helped make Secchiaroli afraid of Wisniewski and Palmieri. As a matter of law " . . . acquittal on a substantive charge does not prevent a conviction for a conspiracy to commit the offense substantively charged unless the necessary proof on the substantive charge is identical with that required to convict on the conspiracy count." United States v. Fassoulis, 445 F.2d 13, 18 (2d Cir.), cert. denied, 404 U.S. 858, 92 S.Ct. 110, 30 L.Ed.2d 100 (1971). *See also* Pereira v. United States, 347 U.S. 1, 74 S. Ct. 358, 98 L.Ed. 435 (1954). Although the jury could have convicted Travisano on the substantive count as an aider and abettor, it chose to convict him only on the conspiracy count. Absolute consistency in the verdict is in any event not required. United States v. Taller, 394 F.2d 435 (2d Cir.), cert. denied, 393 U. S. 839, 89 S.Ct. 115, 21 L.Ed.2d 109 (1968); United States v. Costello, 221 F.2d 668 (2d Cir. 1955), aff'd on other grounds, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). Here no substantial inconsistency appears.

Consequently, all three appellants rely most heavily on the claims of prejudicial publicity, allegedly received from the newspaper story published during the trial, and the trial court's handling of that publicity. That article appeared in the *Hartford Courant* on Saturday, May

29, 1971. It told of Wisniewski's arrest outside the courtroom on Friday, May 28, and his being charged with bribing and threatening a government witness. It described the witness Casey's testimony on Friday. Interestingly enough, if the witness Casey is to be believed—and he turned himself in to the United States Attorney—Wisniewski himself brought the story about. According to Casey, whose testimony was admitted solely as bearing on Wisniewski's consciousness of guilt, Wisniewski told him on Wednesday night, May 26, 1971, after two days of trial, to go see Suli and Secchiaroli; that he had $10,000 to split between them; that they should say they received $7,600 of loans; that if it were not for him (Wisniewski), "they would have been pushing up daisies six months ago. Slu,* or John, was going to have them taken care of"; and that "Slu or John" was Palmieri.

The newspaper article went on to describe Suli's and Secchiaroli's testimony, the charges, the fact that charges against a fourth defendant (one Marangelli) had been dismissed by the trial judge, and it mentioned that all four defendants had been arrested (on these charges) by the FBI in 1970 and that Palmieri was later arrested by New York State authorities on a parole violation and was in custody of Greenhaven, New York, correctional officials. The article concluded by noting Casey's and Wisniewski's arraignments on obstruction of justice charges.

▇▇ Wisniewski is in no position to complain that the article was prejudicial to him, even though it was read by all the jurors. The article mentioned his arrest, but after Casey's testimony the United States Attorney would have been delinquent in his duty if he did not make an arrest and the jury cannot be supposed to have been so naive that this would make any difference to them. Wisniewski grasps at straws by arguing that the jury might have inferred that the others were guilty from the story's

report that charges as to Marangelli had been dismissed as not proved; jurors are not presumed to be stupid or unable to follow the court's rulings on the law. *See* Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 485, 53 S.Ct. 252, 77 L.Ed. 439 (1933). The fact that the story disclosed that Palmieri had been arrested on some vague New York parole violation did not prejudice Wisniewski.

▇▇ Similarly Travisano cannot claim prejudice from the story. That he was associated as a co-defendant with a fellow who had just been arrested for obstructing justice and another who was charged as a parole violator did appear in the story, but again the really prejudicial published matter—the alleged bribe of and threat to Suli and Secchiaroli—had already been heard by the jury through Casey's testimony.

▇▇ Palmieri has more cause for complaint since his own parole violation arrest had not come out in the course of the trial. The impact of that is *de minimis*, however, since Casey had testified —without objection on Palmieri's part —that Wisniewski had said to Casey to tell the victim-witnesses, in a style Damon Runyon would have thought too stereotyped, "Slu, or John" would have had them "pushing up daisies." From that evidence and other similar evidence of Palmieri's reputation and his own "I'll hang you from the rafters" language, the jury could not have been very surprised or shocked to have learned that Palmieri was in fact on parole.

▇▇ In any event, at the first convenient opportunity when court reconvened on Tuesday the trial judge attempted to cure any potential error, with Palmieri's counsel's express consent, by following the practice, *see* Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L. Ed.2d 1250 (1959); Coppedge v. United States, 106 U.S.App.D.C. 275, 272 F.2d 504 (1959), of interrogating the jurors individually in chambers and on the record,[2] as to whether their judgments

---

\* Misspelled "Slew" by the *Courant* or "Slu" in the transcript.

2. The appellants do not complain of the fact that the jurors were interrogated in

would be affected by their having read the story. The court reminded them of their jurors' duty and the presumption of innocence, the answers being sufficient to satisfy the court that there was no real prejudice here. It may be that a preferable practice could have been followed,[3] but we are satisfied on all the evidence that any error to any of the defendants from the jurors' reading the article was harmless, Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705 (1967), under any test. United States v. Persico, 425 F.2d 1375, 1378–1382 (2d Cir.), cert. denied, 400 U.S. 869, 91 S.Ct. 102, 27 L.Ed.2d 108 (1970) (*New York Daily News* front page headline, "CALL VALACHI IN COSA TRIAL," inter alia, did not prevent fair trial). *See also* United States v. Rubino, 431 F.2d 284 (6th Cir. 1970), cert. denied, 401 U.S. 910, 91 S.Ct. 872, 27 L.Ed.2d 808 (1971).

■ Thus we turn to the claims of Palmieri and Travisano concerning Casey's testimony. Palmieri did not initially object to Casey's daisy testimony mentioned above, and the testimony of what Wisniewski had told Casey to tell the victims was received solely to show Wisniewski's consciousness of guilt.[4] United States v. Tropiano, 418 F.2d 1069, 1080–1081 (2d Cir. 1969), cert. denied Grasso v. United States, 397 U.S. 1021, 90 S.Ct. 1258, 25 L.Ed.2d 530 (1970), therefore governs, not Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

Casey's testimony as to Travisano was so garbled,[5] or comes to us in such gar-

---

the absence of counsel. Palmieri complains, however, that the court would not disclose to counsel what the substance of the interrogations was. But in the atmosphere of intimidation and threats of violence permeating the evidence, particularly since Wisniewski's lawyer who had handled the original making of the loan was also trial counsel, the court may well have been concerned with possible juror intimidation.

3. Where juries are not generally sequestered (*e. g.*, Connecticut; the Southern District of New York), and the trial judge can anticipate prejudicial publicity, he might inform the jury of its duty not to read or listen to any story about the trial, tell the jurors on their oath that he will ask them on their oaths the following morning if they have read or listened to any such stories, and then do just that before starting the next day's trial. This can help eliminate the possibility of prejudice. It is a procedure that was first suggested to the author of this opinion by United States District Judge T. Emmet Clarie of Connecticut. Newspapers of course, should not have to be reminded of their own solemn duty not to print criminal records of accused persons lest prejudice result. *See* Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959).

4. It is not disputed that the evidence was received solely for that purpose. United States v. Freundlich, 95 F.2d 376, 378–79 (2d Cir. 1938).

5. Q. At that time did he talk about any other people? A. Oh, about Joseph Travisano. He said—see, I got beat up, and all—
Q. What did he say about—A. That Joe didn't—
The Court: Wait, please. Yes, gentlemen.
Mr. Luedecker: I ask that that be stricken. It's not responsive, and the ladies and gentlemen of the jury should be told to disregard it.
The Court: That's true. It is stricken and you should disregard it.
Q. What did he say to you about Mr. Travisano?
Mr. Luedecker: Same objection, if your Honor please.
Mr. Simons: I object to what he said, to what Wisniewski said about Travisano. He was not present, your Honor, and it's after the dates mentioned in the indictment. If he wants it to be confined to what Wisniewski said about Wisniewski, that's relevant and material. But anything else is not germane, not within the scope of the indictment, and the fact that it's hearsay, Travisano was not present, and he's not claiming he's present, and I think it's highly improper, prejudicial.
The Court: I'll allow it.
By Mr. Byelas:
Q. You can answer the question, Mr. Casey. A. He said Joe Travisano, beating myself up and Mr. Secchiaroli did that on his own [sic], Mr. Wisniewski had nothing to do with it.

bled fashion, that it is hard to read anything into it. We certainly see nothing that would have had a "... probable impact ... on the minds of an average jury." Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969).

■ Wisniewski's claim that he is entitled to the $15,000-plus in cash found on his person at the time of his arrest is premature. The money may be needed as evidence at the trial of the still-pending obstruction of justice charge, since, according to Casey, when he allegedly told Casey to offer $10,000 to Suli and Secchiaroli to change their testimony he motioned toward his pocket, as if to indicate that the money was readily available.

Judgments affirmed.