HARRINGTON *v.* CALIFORNIA.

No. 750.   Argued April 23, 1969.—Decided June 2, 1969.

*Roger S. Hanson,* by appointment of the Court, 393 U. S. 1075, argued the cause and filed briefs for petitioner.

*James H. Kline,* Deputy Attorney General of California, argued the cause for respondent.   With him on the brief were *Thomas C. Lynch,* Attorney General, and *William E. James,* Assistant Attorney General.

Briefs of *amici curiae* urging affirmance were filed by *William J. Scott,* Attorney General, and *James R. Thompson, James B. Haddad* and *James B. Zagel,* Assistant Attorneys General, for the State of Illinois, and by *Louis J. Lefkowitz,* Attorney General, *Samuel A. Hirshowitz,* First Assistant Attorney General, and *Amy Juviler* and *Brenda Soloff,* Assistant Attorneys General, for the State of New York, joined and supported by *John D. LaBelle* for the State of Connecticut, *Paul J. Abbate,* Attorney General, for the Territory of Guam, and by the Attorneys General for their respective States as follows: *Gary K. Nelson* of Arizona, *Joe Purcell* of Arkansas, *Duke W. Dunbar* of Colorado, *David P. Buckson* of Delaware, *Earl Faircloth* of Florida, *Bert T. Kobayashi* of Hawaii, *Theodore L. Sendak* of Indiana, *Richard C. Turner* of Iowa, *Kent Frizzell* of Kansas, *John B. Breckinridge* of Kentucky, *Robert H. Quinn* of Massachusetts, *Douglas M. Head* of Minnesota, *Joe T. Patterson* of Mississippi, *Robert L. Woodahl* of Montana, *Clarence A. H. Meyer* of Nebraska, *James A. Maloney* of New Mexico, *Robert B. Morgan* of North Carolina, *Helgi Johanneson* of North Dakota, *Paul W. Brown* of Ohio, *Daniel R. McLeod* of South Carolina, *Gordon Mydland* of South Dakota, *George F. McCanless* of Tennessee, *Vernon B. Romney* of Utah, *Robert Y. Button* of Virginia, and *Slade Gorton* of Washington.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

We held in *Chapman* v. *California,* 386 U. S. 18, that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.,* at 24. We said that, although "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error" (*id.,* at 23), not all

"trial errors which violate the Constitution automatically call for reversal." *Ibid.*

The question whether the alleged error in the present case was "harmless" under the rule of *Chapman* arose in a state trial for attempted robbery and first-degree murder. Four men were tried together—Harrington, a Caucasian, and Bosby, Rhone, and Cooper, Negroes—over an objection by Harrington that his trial should be severed. Each of his three codefendants confessed and their confessions were introduced at the trial with limiting instructions that the jury was to consider each confession only against the confessor. Rhone took the stand and Harrington's counsel cross-examined him. The other two did not take the stand.[1]

In *Bruton* v. *United States,* 391 U. S. 123, a confession of a codefendant who did not take the stand was used against Bruton in a federal prosecution. We held that Bruton had been denied his rights under the Confrontation Clause of the Sixth Amendment. Since the Confrontation Clause is applicable as well in state trials by reason of the Due Process Clause of the Fourteenth Amendment (*Pointer* v. *Texas,* 380 U. S. 400), the rule of *Bruton* applies here.

The California Court of Appeal affirmed the convictions, 256 Cal. App. 2d 209, 64 Cal. Rptr. 159, and the Supreme Court denied a petition for a hearing. We granted the petition for certiorari to consider whether the violation of *Bruton* was on these special facts harmless error under *Chapman.*

Petitioner made statements which fell short of a confession but which placed him at the scene of the crime. He admitted that Bosby was the trigger man;

---

[1] All four were found to have participated in an attempted robbery in the course of which a store employee was killed. Each was found guilty of felony murder and sentenced to life imprisonment.

that he fled with the other three; and that after the murder he dyed his hair black and shaved off his moustache. Several eyewitnesses placed petitioner at the scene of the crime. But two of them had previously told the police that four Negroes committed the crime. Rhone's confession, however, placed Harrington inside the store with a gun at the time of the attempted robbery and murder.

Cooper's confession did not refer to Harrington by name. He referred to the fourth man as "the white boy" or "this white guy." And he described him by age, height, and weight.

Bosby's confession likewise did not mention Harrington by name but referred to him as a blond-headed fellow or "the white guy" or "the Patty."

Both Cooper and Bosby said in their confessions that they did not see "the white guy" with a gun, which is at variance with the testimony of the prosecution witnesses.

Petitioner argues that it is irrelevant that he was not named in Cooper's and Bosby's confessions, that reference to "the white guy" made it as clear as pointing and shouting that the person referred to was the white man in the dock with the three Negroes. We make the same assumption. But we conclude that on these special facts the lack of opportunity to cross-examine Cooper and Bosby constituted harmless error under the rule of *Chapman*.

Rhone, whom Harrington's counsel cross-examined, placed him in the store with a gun at the time of the murder. Harrington himself agreed he was there. Others testified he had a gun and was an active participant. Cooper and Bosby did not put a gun in his hands when he denied it.[2] They did place him at the scene of

---

[2] "All persons aiding and abetting the commission of a robbery are guilty of first degree murder when one of them kills while acting in furtherance of the common design." *People* v. *Washington*, 62 Cal. 2d 777, 782, 402 P. 2d 130, 133.

the crime. But others, including Harrington himself, did the same. Their evidence, supplied through their confessions, was of course cumulative. But apart from them the case against Harrington was so overwhelming that we conclude that this violation of *Bruton* was harmless beyond a reasonable doubt, unless we adopt the minority view in *Chapman* (386 U. S., at 42–45) that a departure from constitutional procedures should result in an automatic reversal, regardless of the weight of the evidence.

It is argued that we must reverse if we can imagine a single juror whose mind might have been made up because of Cooper's and Bosby's confessions and who otherwise would have remained in doubt and unconvinced. We of course do not know the jurors who sat. Our judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of the two confessions on the minds of an average jury. We admonished in *Chapman*, 386 U. S., at 23, against giving too much emphasis to "overwhelming evidence" of guilt, stating that constitutional errors affecting the substantial rights of the aggrieved party could not be considered to be harmless. By that test we cannot impute reversible weight to the two confessions.

We do not depart from *Chapman;* nor do we dilute it by inference. We reaffirm it. We do not suggest that, if evidence bearing on all the ingredients of the crime is tendered, the use of cumulative evidence, though tainted, is harmless error. Our decision is based on the evidence in this record. The case against Harrington was not woven from circumstantial evidence. It is so overwhelming that unless we say that no violation of *Bruton* can constitute harmless error, we must leave this state conviction undisturbed.

*Affirmed.*

Mr. Justice Brennan, with whom The Chief Justice and Mr. Justice Marshall join, dissenting.

The Court today overrules *Chapman* v. *California,* 386 U. S. 18 (1967), the very case it purports to apply. Far more fundamentally, it severely undermines many of the Court's most significant decisions in the area of criminal procedure.

In *Chapman,* we recognized that "harmless-error rules can work very unfair and mischievous results" unless they are narrowly circumscribed. *Id.,* at 22. We emphasized that "[a]n error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot . . . be conceived of as harmless." *Id.,* at 23–24. Thus, placing the burden of proof on the beneficiary of the error, we held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.,* at 24. And, we left no doubt that for an error to be "harmless" it must have made *no* contribution to a criminal conviction. *Id.,* at 26.

*Chapman,* then, meant no compromise with the proposition that a conviction cannot constitutionally be based to any extent on constitutional error. The Court today by shifting the inquiry from whether the constitutional error contributed to the conviction to whether the untainted evidence provided "overwhelming" support for the conviction puts aside the firm resolve of *Chapman* and makes that compromise. As a result, the deterrent effect of such cases as *Mapp* v. *Ohio,* 367 U. S. 643 (1961); *Griffin* v. *California,* 380 U. S. 609 (1965); *Miranda* v. *Arizona,* 384 U. S. 436 (1966); *United States* v. *Wade,* 388 U. S. 218 (1967); and *Bruton* v. *United States,* 391 U. S. 123 (1968), on the actions of both police and prosecutors, not to speak of trial courts, will be significantly undermined.

The Court holds that constitutional error in the trial of a criminal offense may be held harmless if there is "overwhelming" untainted evidence to support the conviction. This approach, however, was expressly rejected in *Chapman, supra,* at 23, and with good reason. For, where the inquiry concerns the extent of accumulation of untainted evidence rather than the impact of tainted evidence on the jury's decision, convictions resulting from constitutional error may be insulated from attack. By its nature, the issue of substantiality of evidence admits of only the most limited kind of appellate review. Thus, the Court's rule will often effectively leave the vindication of constitutional rights solely in the hands of trial judges. If, instead, the task of appellate courts is to appraise the impact of tainted evidence on a jury's decision, as *Chapman* required, these courts will be better able to protect against deprivations of constitutional rights of criminal defendants. The focus of appellate inquiry should be on the character and quality of the tainted evidence as it relates to the untainted evidence and not just on the amount of untainted evidence.

The instant case illustrates well the difference in application between the approach adopted by the Court today and the approach set down in *Chapman.* At issue is the evidence going to Harrington's participation in the crime of attempted robbery, not the evidence going to his presence at the scene of the crime. Without the admittedly unconstitutional evidence against Harrington provided by the confessions of codefendants Bosby and Cooper, the prosecutor's proof of Harrington's participation in the crime consisted of the testimony of two victims of the attempted robbery and of codefendant Rhone. The testimony of the victims was weakened by the fact that they had earlier told the police that all the participants in the attempted robbery were Negroes. Rhone's testimony against Harrington was

self-serving in certain aspects. At the time of his arrest, Rhone was found in possession of a gun. On the stand, he explained that he was given the gun by Harrington after the attempted robbery, and that Harrington had carried the gun during the commission of the robbery. Thus, although there was more than ample evidence to establish Harrington's participation in the attempted robbery, a jury might still have concluded that the case was not proved beyond a reasonable doubt. The confessions of the other two codefendants implicating Harrington in the crime were less self-serving and might well have tipped the balance in the jurors' minds in favor of conviction. Certainly, the State has not carried its burden of demonstrating beyond a reasonable doubt that these two confessions did not contribute to Harrington's conviction.

There should be no need to remind this Court that the appellate role in applying standards of sufficiency or substantiality of evidence is extremely limited. To apply such standards as threshold requirements to the raising of constitutional challenges to criminal convictions is to shield from attack errors of a most fundamental nature and thus to deprive many defendants of basic constitutional rights. I respectfully dissent.