UNITED STATES of America,
Plaintiff-Appellee,

v.

William Francis RICHARDS, Jr.,
Defendant-Appellant.

No. 17454.

United States Court of Appeals,
Seventh Circuit.

Aug. 17, 1970.

Rehearing Denied Oct. 5, 1970.

Ronald P. Alwin, Chicago, Ill., for defendant-appellant.

William J. Bauer, Thomas A. Foran, U. S. Attys., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Archibald T. LeCesne, Asst. U. S. Attys., of counsel.

Before KILEY, FAIRCHILD and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Defendant William Francis Richards, Jr., along with three co-defendants (Robert J. Hettinger, Robert Edel and Milan George Gruich) were named in a two-count indictment charging violations of 18 U.S.C. § 1708 (mail theft). Count One charged Hettinger and Edel with stealing certain mail. Count Two charged all defendants with possession of personal checks stolen from the mails. Defendant Richards originally pled guilty and was committed to the custody of the Attorney General pursuant to the Youth Correction Act. Subsequently, following Richards' pro se petition for writ of habeas corpus, judgment of conviction and sentence were vacated and defendant was allowed to withdraw his guilty plea and pled not guilty. Defendant Richards was then tried before a jury, found guilty and committed to the custody of the Attorney General for a

period of five years.[1] From the judgment of conviction defendant appeals. We affirm.

Robert Edel, the only one of the four indicted persons to testify at Richards' trial, was the government's chief witness. Edel testified that he and Hettinger, on the morning of March 7, 1967, stole a bag of mail from a postal relay station and took the bag to defendant Richards' apartment (defendant Richards also used the name Orzol) where he resided with Gruich. Edel stated that Hettinger, Gruich and Richards were present when the mail bag was searched in Richards' apartment. They found a pack of blank printed personal checks and replaced the rest of the mail in the bag. Edel related he then hid the mail bag in a cemetery.

Edel testified that he made out one of the checks to a Bill Orzol (defendant Richards) and that Richards told him that he had used the check the following morning to get money from his landlord but that the money he received was in the form of another check which would have to be cashed. On the following day, Edel stated that he, Gruich, Hettinger and Richards drove to the Loop and cashed the check given to Richards at the Greyhound Bus Station and subsequently, he, Richards and Hettinger drove to Florida.

At the trial Edel's substantive testimony was uncontradicted. Richards' landlord, Daniel Foxwell, testified that on March 8, 1967, defendant presented him with a check made out to him (Orzol) and signed by someone else in the amount of $125. Foxwell stated that Richards said he wanted to pay two weeks rent on account and asked for $65 in exchange. Foxwell stated that he accepted the check and gave Richards his railroad retirement check for $83.90. Richards said he would bring back the change but Foxwell stated he never saw Richards again.

Three witnesses testified on behalf of the defense attacking Edel's credibility. Defense witness Ronald LeRoy testified that following the theft of his coin collection, Edel accused others of taking it. Ronald LeRoy also stated that Edel accused Richards of stealing LeRoy's gun. Shameron LeRoy, Ronald's daughter, also testified that Edel had accused Richards of stealing her father's gun but that Edel later admitted to her that he (Edel) had taken it. Shameron also testified that in March and in September of 1968, Edel told her that he was going to kill Richards. The later threat was also testified to by an Eloise Hammond.

Edel denied that he ever accused Richards of stealing, and that he told anyone that in fact it was he (Edel) who had stolen the gun. Edel also denied on either of the two occasions in 1968 threatening Richards' life. Edel did admit that he was "mad" or aggravated with defendant Richards concerning the gun and coins taken from Ronald LeRoy.

Agent Potter, a Postal Inspector, who investigated the mail theft, testified that he had received official communication from Postal Inspectors in Florida. He was then asked if any of these communications related to defendant Richards and defendant's counsel objected to the question. While a short colloquy transpired concerning the defense objection, the witness, agent Potter, volunteered without being further asked that "A statement was taken from Mr. Richards." Defendant thereupon moved for a mistrial and it was denied.

The sole issue raised on appeal is defendant's contention that the volunteered testimony by agent Potter that "A statement was taken from Mr. Richards" without a previous showing that the

---

1. The three other co-defendants (Gruich, Edel and Hettinger) all pled guilty. Gruich received a sentence of one year and one day. Hettinger was committed to the custody of the Attorney General pursuant to the Youth Correction Act. As to defendant Edel, imposition of sentence was suspended and he was placed on three years probation.

statement was elicited in compliance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was a violation of defendant's constitutional right against self-incrimination and therefore reversible error.

The government contends that the procedures outlined in *Miranda* should not apply to the mere testimony that a statement was given when the content of the statement was not introduced. We disagree. The Court in *Miranda*, summarizing its holding on pages 478–479, 86 S.Ct. on page 1630, stated:

> To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. [The Court then discusses the required warnings.] After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. *But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.* [Emphasis supplied]

■ The statement, which agent Potter voluntarily testified was taken from defendant Richards, resulted from an interrogation of defendant while he was in custody in Florida following his arrest on a local charge. In addition, the testimony by the government witness, agent Potter, that a "statement was taken from Mr. Richards" by authorities in Florida, in and of itself constitutes evidence admitted against the defendant regardless of the statement's content. It could reasonably be inferred by a juror that the prosecution would not have commenced a line of questioning concerning defendant's statement to authorities in Florida unless such statement was in some way favorable to the prosecution's case. Consequently, we find the admission of agent Potter's volunteered testimony, which was the product of a custodial interrogation and constituted evidence "used against" the defendant, without a prior showing that the procedures of *Miranda* were complied with, was error.

After a close examination of the record however, we hold beyond a reasonable doubt the error of allowing agent Potter's statement into evidence was harmless and not prejudicial to defendant Richards. See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); see also, Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); United States v. Wick, 416 F.2d 61 (7th Cir. 1969). The untainted evidence placed before the jury unquestionably establishes defendant Richards' guilt. The testimony of the government's chief witness, Robert Edel, was cogent, logical, and completely uncontradicted by the defense. In addition, the testimony of defendant's landlord Foxwell, while not sufficient by itself to prove commission of the crime [2] was completely consistent with Edel's testimony and thus supports its veracity.

Defendant presented no substantive theory of defense. His entire defense merely consisted of the attempt to impeach Edel's credibility through the testimony of three witnesses. The witnesses testified that Edel threatened to kill Richards and that Edel accused Richards of stealing a gun and coin collection and then later admitted he had stolen the gun. Edel denied both accusations.

2. Since Richards was charged with the knowing possession of a check stolen from the mails, the testimony of Foxwell only showed possession and not knowledge.

The determination of a witness' credibility is for the trier of fact. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and the jury's verdict indicates it believed Edel's testimony. We believe the erroneous admission of agent Potter's statement did not affect the jury's determination of credibility and we therefore affirm.

It should be noted, however, in adopting the harmless error rule we are not unmindful of Mr. Justice Clark's warning in United States v. Jackson, 429 F. 2d 1368 (7th Cir., July 22, 1970) which we strongly reiterate:

> "Harmless error" is swarming around the 7th Circuit like bees. Before someone is stung, it is suggested that the prosecutors enforce *Miranda* to the letter and that the police obey it with like diligence; otherwise the courts may have to act to correct a presently alarming situation.

The court thanks Mr. Ronald P. Alwin for his excellent service on behalf of the appellant as court-appointed counsel.

Affirmed.