UNITED STATES of America ex rel. Abraham SIEGEL

v.

William M. LENNOX, Sheriff of the County of Philadelphia.

Civ. A. No. 70–1854.

United States District Court, E. D. Pennsylvania.

June 14, 1971.

Marvin Comisky, Edwin P. Rome, Philadelphia, Pa., for plaintiff.

Arlen Specter, Dist. Atty., T. Michael Mather, Asst. Dist. Atty., Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, District Judge.

Relator was convicted on Bills of Indictment Nos. 893, 896, 898 and 900, January Sessions, 1966, charging false pretenses. At the same time he was also convicted of conspiracy with a co-defendant, Harry Schwartz, now dead, on Bill No. 880. At the trial, which took place before the decision in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), Schwartz's statement, which referred in parts to Siegel, was read into evidence. Having exhausted his state remedies, relator now seeks here a writ of habeas corpus, charging that his *Bruton* rights were violated. There is no doubt that the use of relator's co-defendant's statement violated the Bruton rule, made retroactive by Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968). The Commonwealth, however, contends that the error was harmless under Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

Before the reading of Schwartz's statement, the only evidence to connect him with Siegel as a co-conspirator was inferential. It was shown that Schwartz had appointed Siegel deputy constable in 1955; that Schwartz's wife and Siegel were both officers of the Active Collection Agency; that both Mrs. Schwartz and Siegel received compensation from the Agency and that Siegel's salary had mounted rapidly. Such evidence to establish Schwartz's conspiratorial connection with Siegel's activities was, at best, extremely weak. Of course, for Siegel to be convicted of conspiracy, there had to be at least a second participant. Unless Schwartz's connection with Siegel's illegal activities were proven, the conspiracy indictment against Siegel would fall. The statement provided this nexus between the two defendants. As the Commonwealth stated in its original Memorandum of Law:

"In fact, a reading of the record as a whole indicates that the thrust of the presentation toward the end of the trial was an attempt to connect Harry Schwartz with the already clearly proven evidence of Siegel's misconduct."

Under these circumstances, the Schwartz statement was a "powerfully incriminating extrajudicial" statement which established not only Schwartz's, but Siegel's guilt of the separate and distinct crime of conspiracy. The writ will be granted as to Bill No. 880.

The evidence as to cheating and false pretenses is another matter. Delinquent

bills were given to Siegel for collection by the Philadelphia Credit Bureau. The record, without the Schwartz statement, leaves no doubt that illegal charges and interest were added to the debt by Siegel or his office. The Credit Bureau never authorized the extra charges, and no part of these charges was turned over to the creditor. When the debtor appeared, it was in a magistrate's courtroom. The victims were given no explanation of the added charges. There was evidence that in fourteen or fifteen individual cases, improper charges were added and collected by Siegel or his deputies. There can be no doubt that the charges were in violation of the Constables' Fee Bill, 13 Pa.Stat.Ann. § 6 et seq.

The Schwartz statement, insofar as it related to Siegel, was:

"Q   Is there an underlying arrangement between Mrs. Schwartz and Constable Siegel for division of the profits in a more or less partnership arrangement or what is the arrangement there, if any?

"A   Mr. Siegel came to work for me in September, 1953. At the magnificent sum of or munificent of $50 per week. And when I became a Magistrate his—I'll tell you the truth, his salary went up in leaps and bounds because that was terrific salvation not only to myself but to every member of my family, and I don't restrict it to 9:00 to 5:00. I mean twenty-four hours a day seven days a week. Today since I became a Magistrate that man has fifty percent of the profits.

"Q   Does he hold—but he doesn't hold fifty per cent of the stock?

"A   No, sir. It's truly a what you call a Horatio Alger story from $50 a week up to about $20,000.

"Q   And the offices of the collection agency are located where?

"A   2307 North Broad Street."

*    *    *    *    *    *

"Q   Abe Siegel really runs the business?

"A.   Abe Siegel really runs the business. There's no question about that, sir."

*    *    *    *    *    *

"A   Well, it is just a collection gag, that's all. There are two ways. You either don't exhibit the correct amount or you exhibit a greater amount than what they owe. You have to get a reaction. You want to collect the money. If you're working for a percentage, that's the way you collect money.

"I wanted to add something but it slipped my mind. I think it will be interesting. It will come to me. I'll tell you."

*    *    *    *    *    *

"A (Interposing) Siegel gets the Bell Telephone Company cases. It isn't the Active Collection Agency, because the Philadelphia Credit Bureau has a collection agency. They don't give the claims to the Active, they give them to the constable. And do you want to know something? They still mention it to me. I'm the one that's going to be responsible if anything goes wrong because they trust me.

"Q   Let me ask you this, sir. As you are familiar with these Bell Telephone cases,—

"A   (Interposing) Somewhat.

"Q   (Continuing)—at what point of time is the—at Bell Telephone or PCB or Siegel is the determination made to add interest to the phone company bill?

"A   Well, the fact that they add interest is merely to try to collect the claim. They make the claim greater than what it is by the addition of interest. The fact that the interest may or may not be collected you're not interested in."

*    *    *    *    *    *

"A   It's Siegel's office that adds on the interest. But I repeat, you do not know whether that interest is collected or not.

"Q   Would it surprise you, sir, to find out that in many instances—

"A   (Interposing) They are collected?

"Q (Continuing)—interest is collected?

"A Yes, sir. I'm not surprised. I'm not surprised."

The relator argues that intent could not be found from the testimony of the witnesses, and that the statement supplied that missing element. We disagree. In our judgment, the evidence was overwhelming. First, since neither the creditor nor the Philadelphia Credit Bureau added the charges, it is inescapable that they were added by Seigel. Second, since Siegel was a duly elected constable, it must be presumed that he knew of their illegality. Third, since no part of the overcharges was paid to the creditor, the only conclusion is that Siegel got it. Fourth, the evidence established a consistent pattern of illegal charges in at least fourteen or fifteen cases. There could be no conclusion from all this evidence other than that Siegel intended to defraud the debtor. The statement added nothing to this inescapable conclusion. In Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) it was held "that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." (p. 24, 87 S.Ct. p. 828). And in Harrington v. California, 395 U.S. 250, at page 254, 89 S. Ct. 1726, at page 1728, 23 L.Ed.2d 284 (1969), the Court said:

" * * * Our judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of the two confessions on the minds of an average jury. * * * "

The Schwartz statement, if it did anything, provided a basis for finding that there really was *no* intent to defraud, but rather that the addition of interest was merely a lever to collect the debt. In any event, on our own reading of the record, we conclude that as to Siegel, the statement was harmless beyond a reasonable doubt. We therefore deny the writ as to Bills Nos. 893, 896, 898 and 900.