**UNITED STATES of America,
Appellee,**

v.

**Gregory HUBERT, Appellant.**

**No. 979, Docket 35800.**

United States Court of Appeals,
Second Circuit.

Argued June 2, 1971.

Decided June 18, 1971.

Robert Kasanof, The Legal Aid Society, New York City (Robert Hermann, New York City, of counsel), for defendant-appellant.

Robert T. Hartmann, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. for Southern District of New York and Peter F. Rient, Asst. U. S. Atty., of counsel), for appellee.

Before CLARK, Associate Justice,* SMITH, Circuit Judge, and ZAVATT, District Judge.**

PER CURIAM:

Defendant appeals from a judgment of conviction following a two-day jury trial before Tenney, J., in the Southern District of New York. A one-count indictment charged him with the possession (not the theft) of stolen mail bags in violation of 18 U.S.C. § 1708. On December 14, 1970, he was sentenced to a term of imprisonment of one year, and is presently enlarged on bail pending the determination of this appeal.

The evidence adduced through three Government witnesses, Postal Inspector Battles, Postal Investigative Aide Kingsland, and Penn Central Police Officer Western, established the defendant's

---

\* United States Supreme Court, Retired, sitting by designation.

\*\* Of the District Court for the Eastern District of New York, sitting by designation.

guilt beyond any doubt. The defendant called no witnesses, but relied in summation on the defense of mistaken identity, which the jury obviously rejected.

The evidence adduced on the Government's direct case showed that a series of six mail thefts had occurred during June, 1969 in the Penn Central Railroad yard (yard) which extends from 130th Street to 155th Street in Manhattan, New York, and is bounded on the west by the Hudson River and on the east by Riverside Drive. At Riverside Drive and 139th Street a dirt path leads to a wall below which is the yard. At the end of the path and slightly south is a wooded area which, prior investigation revealed, was the spot at which the thieves took the stolen mail and rifled its contents.

A combined Post Office and Penn Central surveillance team of several men met on July 1, 1969 and walkie-talkies were given to the Penn Central personnel. The team proceeded to the vicinity of the yard to begin their surveillance. At about 11:35 P.M., three men were observed walking down the path and jumping over the wall. One was white, one brown-skinned and the third, later identified as the defendant, was described as a Negro wearing a black hat, a dark green jacket and sneakers. As the three jumped over the wall, Battles so informed Western, who was stationed underneath a car in the yard and saw the defendant (whom he later identified by his clothing) act as a look-out, while his partner opened the lock on a mail car, removed eight or nine mail bags and departed. Thereafter, Battles, who had been in communication with Western by walkie-talkie during these events in the yard, saw mail bags being thrown up over the wall followed by the same three men who had previously descended that wall into the yard. He saw defendant and the others dragging mail bags to the wooded area. Battles and Kingsland testified that they overheard sounds of parcels being ripped open from the wooded area. A few minutes later, the defendant emerged from this area,

looked around, and returned. Shortly thereafter, the three men reappeared and, when ordered to halt by Battles, fled in opposite directions. Defendant was apprehended by Kingsland after a chase during which Kingsland never lost sight of him. After being warned of his rights, defendant admitted only that he had been in the yard with a friend but refused to elaborate. The others escaped.

While it is true, as defendant claims, that only Battles identified defendant by his facial characteristics, it is also true that the surveillance team never lost sight of the defendant from the outset of the crime up until his apprehension. The night was clear and the lighting, in the vicinity of the yard, was good. Defendant does not challenge the sufficiency of the evidence, which clearly pointed to him as one of the perpetrators of this crime.

The sole ground urged on this appeal concerns the allegedly reversible error committed by the trial judge when Battles was asked the following question on redirect:

> Q. Following the arrest of Mr. Hubert, do you know whether or not there were any further thefts of mail from the * * * yard? A. There were not (tr. p. 101).

An objection to this question and answer was made and overruled. Defendant argues that, since defendant was not charged with the theft of this mail nor with any of the prior thefts, this question was immaterial to the issues in the case and had an extremely prejudicial effect on the jury, in that it could infer from the answer that defendant had committed the prior thefts as well as the instant theft. The Government argues that the question, while of admittedly low probative value, tended to establish the element of intent, i. e., that defendant knew that the bags were stolen.

While it is true that the connection between the question asked and the claimed purpose for asking it is tenuous, and most likely should have been excluded, the court is convinced that the error,

if any, was harmless, when viewed in the context of an otherwise flawless trial in which the evidence of defendant's guilt was overwhelming. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The judgment of conviction is affirmed.