PER CURIAM.
These consolidated appeals by Raymond L. Newton (appeal No. 71-1142) and Ger-maine C. Newton (appeal No. 71-1143), are from their conviction of second degree murder, when tried under an indictment charging them with murder in the first degree. Raymond Newton received a life sentence. Germaine Newton was sentenced to imprisonment for twenty years. On consideration of the several contentions presented on behalf of the appellants as grounds for reversal, we find no reversible error has been shown.
Facts the jury was entitled to find from the evidence included the following. The defendant was the owner or operator of a business designated “Ray’s Car Lot.” A half-brother of the victim William Flagler was having some work done on his car there. On Saturday afternoon, January 10, 1970, the victim and several other persons including his half-brother drove onto the lot. The half-brother got out of the car and remained there. The victim drove away in a manner which resulted in the wheels of his car throwing stones or pebbles which may have struck some of the cars on the lot. Thereupon, in the presence of witnesses who so testified at trial, the appellant Ray Newton told the victim’s half-brother, “Jack, be sure when you get home to tell your bother when I see him I am going to stomp his damned — in the ground.” Approximately a half hour after midnight of that day the defendants Ray Newton and his wife Germaine Newton came into the victim’s house. Both were armed with shotguns. Present, in addition to the victim and his wife, were a number of their friends. After brandishing his weapon Ray Newton proceeded from the room in which the friends were present into an adjoining room which was a bedroom, and his wife stood in the doorway to that room. On entering the bedroom the defendant Ray Newton shouted: “Where’s William? Where’s William?” The victim’s wife, who was in or went into the bedroom at that time, answered that he (William Flagler) was not there. On a bed in the room a form (which in fact was William Flagler) lay huddled under the bed clothes. Ray Newton approached the bed with the shotgun and “pushed twice” against the figure under the covers and the gun was discharged into the figure on the bed. The shot proved fatal to the victim. A witness testified that after the gun went off the defendant Germaine Newton stated: “That boy is not dead. He got guts,” and then said: “Let’s go, Ray.” Thereupon the Newtons departed.
Appellants’ first two contentions challenge rulings of the trial court involving testimony of a witness, Robert Lee Green. The trial was the second trial of the defendants under the indictment. On the first trial, which ended in a mistrial, Green had testified as a witness for the state. When the second trial was held Green was in Viet Nam. The state presented the testimony given by Green at the prior trial, as authorized by Rule 3.-640(b) CrPR, 33 F.S.A.
Defendants sought to impeach that testimony by offering in evidence an affidavit containing contradictions of Green’s earlier testimony, which affidavit had been made by Green after the first trial and prior to leaving the country.
We agree with the ruling of the trial court in excluding the affidavit, on the authority and reasoning of Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409. See also Young v. United States, 5 Cir. 1938, 97 F.2d 200, 206; Culwell v. United States, 5 Cir. 1952, 194 F.2d 808, 811.
In Mattox v. United States, supra, it was held that where a witness in a criminal trial had died since the trial and his testimony given on the first trial was read in evidence at a second trial, statements made by him after the first trial, that his testimony on that trial was false, are not ad *17 missible to impeach his earlier testimony. Commenting thereon the Court said:
“While the enforcement of the rule, in case of the death of the witness subsequent to his examination, may work an occasional hardship by depriving the party of the opportunity of proving the contradictory statements, a relaxation of the rule in such cases would offer a temptation to perjury, and the fabrication of testimony, which, in criminal cases especially, would be almost irresistible. If it were generally understood that the death of a witness opened the door to the opposite party to prove that he had made statements conflicting with his testimony, the history of criminal trials leads one to believe that witnesses would be forthcoming with painful frequency to make the desired proof. The fact that one party has lost the power of contradicting his adversary’s witness is really no greater hardship to him than the fact that his adversary has lost the opportunity of recalling his witness and explaining his testimony would be to him. There is quite as much danger of doing injustice to one party by admitting such testimony as to the other by excluding it. The respective advantages and disadvantages of a relaxation of the rule are so problematical that courts have, with great uniformity, refused to recognize the exception.”
In the instant case the reason for application of the rule of exclusion of such evidence is even stronger than in the Mattox case where the witness had died, because when Green’s affidavit was obtained by defendants after the first trial they could have taken steps to preserve his testimony before he departed the country, for the purpose of its use in the second trial, under the procedure provided therefor by Rule 3.190(1) CrPR. They did not do so, and it appears that the state was not aware of the making of such affidavit by the witness Green, and did not have knowledge of Green’s whereabouts at that time.
Appellants’ third contention was stated in the brief as follows: “Whether the trial court erred in not permitting defense counsel to cross-examine designated prosecution witnesses as to their reason for having changed their testimony between the first trial and the second.”
One of the eye witnesses to the shooting, L. T. Bowen, who was made a court witness at the second trial, testified that in holding the gun Ray Newton did not have his finger on the trigger of the shotgun but had his hand on the stock some inches to the rear of the trigger. The state, in its examination of the witness brought out that at the first trial Bowen had testified Ray Newton had his finger on the trigger. The appellants argue the court erred by sustaining objections by the state to questions by defendants’ counsel to witnesses Leroy Green and L. T. Bowen as to a motive for such different testimony at the two trials. As a proffer defendants’ counsel stated that, if permitted to answer, those witnesses would testify that at the time of the first trial the eye witnesses to the occurrence had agreed to make their testimony against the defendant Ray Newton “as hard on the defendant as possible to show deliberate murder so that the sister, Geraldine Bowen, could obtain money in a law suit which was anticipated and pending and not dispensed with.”
That point or contention of error presented by appellants is held to be without merit. It should be noted, as to the difference pointed out in the testimony at the two trials, that what was said on the second trial as to whether Newton’s finger was on the trigger, was more favorable, or less damaging to the defendant than was the testimony on that feature at the earlier trial. Since the purpose of the cross-examination which the court excluded in this case, as revealed by the proffer, was to attempt to show that the eye witnesses had agreed to exaggerate their testimony on that point in order “to show deliberate murder,” that is, to show premeditation, *18 then if in fact they had agreed to so testify incorrectly on the first trial, it would be immaterial. This is so because on the first trial, where such exaggerated testimony is supposed to have occurred, a mistrial re-suited, and that “finger on the trigger” testimony was not repeated at the second trial.
Moreover, if the ruling should be considered to be contrary to a general rule permitting inquiry as to motive for divergent testimony of a witness on separate occasions, for the purpose of disclosing interest or bias of the witness, it would be harmless error in this case, for several reasons; first, because the bias indicated by the proffer was at the first trial rather than on the subsequent trial; second, because on the second trial the jury rejected the element of premeditation, for proof of which that particular testimony had bearing; and third, because evidence to establish and support the contention of the defendants of second degree murder was ample if not overwhelming. § 924.33 Fla.Stat., F.S.A. Cornelius v. State, Fla. 1950, 49 So.2d 332, 335; Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284.
Appellants argue that the judgments should be reversed because of a certain comment by the state attorney in closing argument. Appellants insist it was a comment prohibited by Rule 3.250 CrPR, on the failure of the defendant Raymond Newton to testify in his own behalf. The defendant Germaine Newton testified at the trial. The comment in question was: “Now, no one else testified in this cause that they invited either Mr. or Mrs. Newton into the house. And we asked them each and every one of them.” That comment, when taken in context, was not within the prohibition of Rule 3.250.
The statement had relation to a question raised in the trial as to whether the Newtons’ entrance into the house was invited or was uninvited. It appears that the persons (other than the victim) who were occupants of the house at the time of the incident had testified on the point. Most stated they were asleep or dozing when the defendants came in. The victim’s wife stated she had been asleep and was awakened by the sound of a car driving up to the house. The testimony of the occupants was that he or she had not invited the Newtons in, and had not heard anyone else invite them to come in. One of the occupants who was awake at the time, Robert Lee Green, testified he was in the kitchen when the defendant Raymond Newton “busted in the back door.”
The challenged statement of the state attorney followed a reference by him to the testimony of Green, that “they busted in the door” and that “then Ray stuck a gun in my side.” Therefore, the state attorney’s statement was another way of saying that Green had said the defendants came in uninvited (“busted in the door”) and that none of the other witnesses testified “they invited Mr. Or Mrs. Newton into the house. And we asked them, each and every one of them.” Quite obviously, the challenged statement of the state attorney had reference only to the answers given on the question as to “invitation” by the witnesses who testified. It had no reference to anyone who had not been a witness. As we view the statement it could not reasonably have been construed by the jury to have referred to other than the witnesses who had testified on that point. The trial court was eminently correct in holding the challenged statement did not constitute basis or necessity for the granting of a mistrial.
A final contention presented by the appellants is that the court erred in denying their motion to suppress evidence consisting of two shotgun shells and a loaded 38 calibre revolver found by the police upon search of the automobile of the appellant Germaine Newton, on a search warrant ob *19 tained after her arrest. We find no error there. Ludwig v. State, Fla.App.1968, 215 So.2d 898; State v. Gustafson, Fla.1972, 258 So.2d 1.
The judgments are affirmed.