McNULTY, Judge.
We have carefully reviewed the record herein of more than 3,200 pages, together with the briefs on the seven points on appeal raised by appellant, and find no reversible error in his conviction for first degree murder and the life sentence imposed .therefor.
In view of the multiloquent dissent by our brother Mann, however, we deem it propitious to point out, with regard to the pre-indictment identification procedures (i. e., the corporeal and photo lineups) used by the investigating officers in this case, that even assuming them to be unfair and impermissibly suggestive as Judge Mann apparently says (with which we do not necessarily agree), the truth-finding process was not contaminated thereby.
The “witnesses” of whom Judge Mann speaks were all those who “identified” appellant as being one of two white men involved in events leading up to the kidnapping of the victim after forcing her husband out of the car involved. But there is no dispute on this identity point. Appellant admitted in his own testimony that he was one of the two white men involved up to that point, his co-felon Durham being the other.[1] His sole defense was, and is, that he did not wilfully participate or acquiesce in the kidnapping, and that after the victim’s husband was ejected from the *516 car as aforesaid, and when the only persons present were Durham, the victim and he, he expressed his disassociation from Durham and his disavowal of the whole affair. He then got out of the car, he says, leaving Durham and the victim to their own pursuits, and knows nothing of subsequent events leading up to the murder except that which he says Durham later told him, viz., that Durham was the sole perpetrator of the murder. Durham, of course, contradicted appellant and testified that appellant participated all the way. Moreover, said Durham, appellant was, in fact, the actual killer. But admittedly there were no witnesses after the kidnapping save Durham and appellant. It follows, then, that, the other “witnesses’ ” testimony as to the identity of appellant could only have related to that which appellant admits, i. e., that he .was initially involved prior to the kidnapping. Their testimony as to which of the two white men was the aggressor in these admitted preliminary incidents,'or as to which of them had which of two guns admittedly involved, merely tended to corroborate or rebut the testimony of either Durham or appellant in their respective versions of pre-kidnap events; and this, of course, could not have been suggested by pre-indictment corporeal or photo lineup procedures which relate only to who was involved and not as to what they did assuming their involvement. “Who” in this case, as noted, were admittedly both Durham and appellant, and the witnesses’ testimony concerning the conduct of the “dark-haired one” (Durham) or the “blond-headed one” (appellant) was unrelated to their actual identity otherwise established by their own admission. How, then, could appellant be prejudiced by the “identification” [2]
The case boiled down to a swearing match between Durham and appellant, the only two persons left with the victim after all other “witnesses” were out of the picture, as to whether appellant participated in the murder.[3] The jury resolved such match against appellant and we cannot, as a matter of law from this record, articulate a reversal of that finding nor can we find prejudicial error otherwise.
Affirmed.
HOBSON, J., concurs.
MANN, C. J), dissents with opinion.

. Durham was granted immunity for his testimony herein.

. Cf. Harrington v. California, (1969) 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284.

. Although many witnesses were called by both sides who testified as to matters or conversations occurring after the murder and upon whom each relied for corroboration or rebuttal, as the case may be.