Gene Thomas REEVES, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–391.

Court of Criminal Appeals of Oklahoma.

April 7, 1977.

Rehearing Denied Aug. 24, 1977.

Bill Pipkin, Moore, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

The appellant, Gene Thomas Reeves, hereinafter referred to as defendant, was charged, tried before a jury in a two-stage proceeding and convicted in the District Court of Cleveland County, Case No. CRF–74–108, for the crime of Attempted Rape, After Former Conviction of a Felony. The defendant appealed to this Court in Case No. F–74–761 and by opinion dated May 12, 1975, *Reeves v. State*, Okl.Cr., 535 P.2d 706, the first conviction was reversed and the cause remanded for new trial. Subsequently, the case was retried and the defendant was again convicted, the jury assessing punishment at a term of fifteen (15) years under the direction and control of the Department of Corrections of the State of Oklahoma. From a judgment and sentence in accordance with the verdict the defendant has again perfected his appeal.

Briefly stated the evidence adduced at trial is as follows: The prosecutrix testified that on February 22, 1974, she was fourteen years of age and went to the defendant's jewelry store in Moore to deliver a ring which the defendant was to sell for her father. While there the defendant asked her if she would like to work in the store and stated that if she could she should return in about thirty minutes. The prosecutrix then left, checked with her parents, changed into a dress and returned to the store about 6:00 p. m. The defendant took her to the back room and attempted to teach her to engrave and while in the process kissed her on the lips. The defendant then asked her to add up the day's receipts and return to the front of the store. Short-

ly thereafter he returned to the back and started kissing her again. He then stood her up, holding her arms behind her back and in response to her protests stated that he would not hurt her and would be gentle. With his free hand he then raised her dress, pulled down her hose and underpants and began to fondle her vagina. He then proceeded to unzip his pants and produced his penis. She then testified that the defendant, "put his hands on me and his fingers, and he was trying to get himself where he could get in me." He then heard the chimes on the front door and a customer came in the front. The defendant yelled, "We're closed." The witness was trying to scream and the defendant told her that if she didn't shut up he would kill her. After about five minutes the customer left, and shortly, the witness again heard the door chime and the defendant again yelled, "We're closed." The defendant's wife responded, "No we're not." The prosecutrix then moved causing the defendant to fall to the floor and she then rearranged her clothing and walked into the front part of the store. The defendant's wife asked what was going on and the witness told her she thought the defendant had raped her. The defendant's wife asked her not to contact the police. The witness then saw her sister and a friend outside the store and left. Subsequently, the incident was reported to the police and the witness was taken to the hospital for a medical examination. The witness testified that she was not actually raped and during the assault the defendant offered to raise her salary from $75.00 per week to $200.00 per week. On cross-examination the witness testified that approximately 30 minutes passed between the time the defendant stood her up and held both hands behind her back and the arrival of the defendant's wife.

Cindy McGuffey then testified that she and the prosecutrix's sister drove to the defendant's jewelry store to pick up the prosecutrix at approximately 7:40 p. m. and waited about twenty minutes for her to come out. She further testified that when the prosecutrix came out she stated that she had been raped by the defendant. The witness described her as being in tears and nervous. Charlene Barnhill then testified that on the evening in question the prosecutrix came to the Barnhill home between 8:30 and 8:45 and stated that she had been raped. Mrs. Barnhill described the prosecutrix as being hysterical and almost to the point of being in shock. She checked the prosecutrix and found that she was not hurt or bleeding but that her vaginal area was very red and irritated. Her husband then called the sheriff and the prosecutrix was taken to the hospital for medical examination. The prosecutrix's father then testified that at approximately 5:30 p. m. on the date in question he received a phone call from the defendant concerning his daughter going to work in the jewelry store and it was agreed that she could work at the store. He stated that he next saw his daughter later that evening at the Barnhill home where his daughter was very upset and told him that she had been raped. The State subsequently rested.

The defense then called the defendant's wife, Elda Reeves, who testified that on the date in question she and her daughter drove to the jewelry store to pick up her husband around 7:30 p. m. and were waiting outside the car when they noticed a customer go into the store and look at merchandise for approximately ten minutes although no one waited on her. When the customer left Mrs. Reeves went into the store to see what was delaying her husband. When she walked in the store the defendant was standing in the middle door with his back to her. When the defendant heard the door open he stated, "we are closed." The witness further testified that the prosecutrix was standing in front of the defendant and they were holding hands. In response to his wife's inquiries the defendant stated that he had been teaching the prosecutrix how to engrave. The prosecutrix went back into the back room to get her purse and then walked into the front of the store where she told the witness that the defendant had been "kissing on" her and trying to make love to her and then left. She further testified that her husband's pants were not unzipped.

After the jury returned a verdict of guilty in the first stage of the proceeding the State submitted proof, over the defendant's objection and offer to stipulate, of the defendant's prior conviction for assault with intent to rape. The jury assessed punishment as set out above.

On appeal defendant presents seven assignments of error which we have considered at length, together with the excellent briefs filed by the respective parties and authorities cited therein. While there is some merit to the assignments of error, they do not require discussion in this opinion. For the second time we have received evidence which unmistakably and overwhelmingly supports the verdict of the jury, and we are of the opinion that if the case were resubmitted to a jury for a third time, absent the errors of which the defendant now complains, the jury could arrive at only one verdict—that of guilt.

Under such circumstances these errors must be considered harmless under the Harmless Error Doctrine set forth in *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), and *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

While we have no hesitation in finding that the errors did not contribute to the verdict of guilt, we cannot say that they did not contribute to the jury's assessment of punishment, and therefore hold that the judgment and sentence should be modified from fifteen (15) years' imprisonment to a term of ten (10) years' imprisonment, and as so *MODIFIED*, judgment and sentence is *AFFIRMED*.

BUSSEY, P. J., and BRETT, J., concur.

