COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Haley and Senior Judge Annunziata
Argued at Alexandria, Virginia


LIONEL NICHOLAS CAMPBELL

v.      Record No. 1443-05-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE JAMES W. BENTON, JR.
DECEMBER 19, 2006


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Burke F. McCahill, Judge

Lorie E. O'Donnell, Public Defender, for appellant.

Karen Misbach, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellee.


The trial judge convicted Lionel Nicholas Campbell of rape. Campbell contends the trial

judge erred in admitting the report of a "sexual assault nurse examiner" as a business record

exception to the hearsay rule. He further contends the evidence was insufficient to support his

conviction for rape because the evidence failed to corroborate his confession. We affirm the

conviction.

I.

The grand jury indicted Lionel Nicholas Campbell for having sexual intercourse with a

teenager against her will by force, threat, or intimidation, in violation of Code § 18.2-61. At trial,

the grandmother of the fourteen-year-old girl testified she took the teenager, who is her daughter's

child, to a hospital after the teenager told her about an incident involving the teenager and

Campbell. Campbell is married to the teenager's mother.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

After the police received a report of the incident, a police officer met with the teenager and her grandmother, and the officer then contacted a sexual assault nurse examiner. The officer brought them to the nurse for an examination, and he later obtained a warrant to arrest Campbell. Campbell was arrested in South Carolina two months later and was extradited to Virginia. After returning to Virginia, Campbell agreed to be interviewed by the police and made statements the police recorded.

The transcript of the statements was offered in evidence. In the interview, Campbell said he discovered that his wife, who was visiting in Jamaica when these events occurred, was having a romantic affair with a man in Jamaica. Campbell said he became distressed when he learned of his wife's affair; he blamed the teenager, his wife's daughter, for the breakup of his marriage. Campbell testified the teenager remained in his care while her mother was in Jamaica, and he described instances he said demonstrated the teenager's disrespectful conduct toward him.

One night after Campbell talked to his wife on the telephone, he permitted the teenager to visit at her friend's home. Later that night, Campbell woke from a dream about his wife, "got a knife and . . . thought about slitting [his] wrist." He telephoned the teenager and told her to come home. He explained he wanted to talk to her about her disrespectful conduct. When the teenager arrived home, Campbell angrily sent her to her room. Blaming the teenager for his wife leaving, he directed her to remove her clothing, giving as his reason the marital problems he was experiencing. When the teenager asked him why he was holding a knife, Campbell said he "looked at her and thought, and put it down."

Campbell then "tried to have sex with her." He said he took her to his room to obtain a lubricant because he didn't want to hurt her. In his bedroom, he began having sexual intercourse with the teenager, saying "it's your fault." He testified he "never actually held her down [but] . . . just told her what to do." As this was occurring, the teenager asked why he was "doing it so hard."

The next day Campbell became worried when the teenager did not return home from school. He went to the school searching for her because he knew "she [was] mad at [him]" and he "needed to know if she was OK." He said he "was hoping she didn't do anything to herself as a result [of the incident]." The following day, he called the school because she had not returned home. Later that day she called him from school and "said she was OK and she said she was still hurt." He asked if she informed anyone about the events and told her he was sorry. Campbell said he later drove to South Carolina after he "heard about jail and [an] arrest warrant."

In the interview, Campbell also said he threatened the teenager and told her not to tell anyone about the event. He did not specify when he made this threat. Campbell also said he had twice engaged in consensual "sex" with the teenager a year before this incident, explaining she initiated those prior events.

In addition to the transcript of Campbell's statements, the prosecutor introduced in evidence a certificate of analysis concerning human biological materials obtained from the teenager and Campbell. A forensic technician testified, "the DNA profile that was foreign to [the teenager] that was obtained from the sperm fraction of her vaginal/cervical swabs is consistent with the DNA profile of Campbell." She testified, "[t]herefore, Campbell cannot be eliminated as a possible contributor to this genetic material." She further testified that the probability of randomly selecting an unrelated individual with the same DNA profile was one in greater than six billion.

Over a hearsay objection, the trial judge admitted in evidence a report of a sexual assault nurse examiner. The judge ruled the report was a business record. The report disclosed that the teenager's genitalia appeared "abnormal but the nature of the abnormalities are non-specific and may or may not be supportive of the reported allegation." By agreement between the prosecutor and Campbell's attorney, a page was redacted from the report to exclude information related by a police officer.

At the conclusion of the prosecutor's evidence, the trial judge denied Campbell's motion to strike the evidence. Campbell rested without presenting evidence and renewed the motion to strike the evidence. Following arguments, the trial judge made specific findings and convicted Campbell of rape.

II.

Campbell contends the trial judge erred in admitting the nurse's report as a business record exception to the hearsay rule. He argues the report was hearsay and its admission violated his right of confrontation. The Commonwealth responds the trial judge properly ruled that the report was a business record and that, under Crawford v. Washington, 541 U.S. 36, 58 (2004), business records are not "testimonial." The Commonwealth further argues, however, that, if the trial judge erred, the error was harmless. We agree that the error, if any, was harmless.

The primary evidence in this prosecution was Campbell's extra judicial admissions to the police of his activity with the teenager. "[A]s a general principle of law, an accused cannot be convicted solely on his uncorroborated extra judicial admission or confession." Watkins v. Commonwealth, 238 Va. 341, 348, 385 S.E.2d 50, 54 (1989). To obtain a conviction, the evidence must corroborate the corpus delicti. Id. Undoubtedly, the prosecutor offered the nurse's report for the purpose of corroborating Campbell's admissions.

As the Supreme Court of Virginia has noted "the . . . harmless error standard has been applied expressly by the Supreme Court of the United States in appeals in which the constitutional Confrontation Clause has been violated." Dearing v. Commonwealth, 260 Va. 671, 674, 536 S.E.2d 903, 904 (2000). See Coy v. Iowa, 487 U.S. 1012, 1021 (1988); Luginbuyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77-78 (2006) (en banc).

> The standard that guides our analysis of the harmless error issue in this case is clear. Thus, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt;" otherwise the

- 4 -

conviction under review must be set aside. Chapman v. California, 386 U.S. 18, 24 (1967). This standard requires a determination of "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Id. at 23. In making that determination, the reviewing court is to consider a host of factors, including the importance of the tainted evidence in the prosecution's case, whether that evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and the overall strength of the prosecution's case. Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986); see also Harrington v. California, 395 U.S. 250, 254 (1969); Schneble v. Florida, 405 U.S. 427, 432 (1972) (erroneously admitted evidence harmless where it was merely cumulative of other overwhelming evidence of guilt).

Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999).

On brief, Campbell acknowledges that the nurse's report and the certificate of analysis of the DNA were offered to corroborate his admission that he and the teenager engaged in sexual intercourse. The DNA analysis corroborated his admission in that it excluded, with an extremely high degree of probability, someone other than Campbell as the person who had sexual intercourse with the teenager. In particular, the analysis disclosed the presence of DNA from sperm consistent with Campbell being the contributor and established the probability of random selection yielding this result as one in greater than six billion.

In light of the corroborative value of the DNA analysis, the value of the nurse's report was marginal. The nurse's report was redacted to eliminate references to Campbell and the teenager's allegations about the events. Though the report noted some abnormality in the teenager's genitalia, it concluded "the abnormalities are non-specific and may or may not be supportive of the reported allegation."

The nurse's report was, therefore, merely cumulative of the DNA report as evidence corroborating the admitted sexual contact. The DNA evidence was uncontroverted and provided overwhelming proof of sexual contact between Campbell and the teenager. We hold, therefore, that the admission of the nurse's report, even if error, was harmless beyond a reasonable doubt under

- 5 -

these circumstances.  See Pitt v. Commonwealth, 260 Va. 692, 696, 539 S.E.2d 77, 79 (2000) (holding evidence harmless where it was merely cumulative of other substantial evidence); Dearing, 260 Va. at 674, 536 S.E.2d at 904 (holding evidence harmless because it was cumulative of other evidence).

III.

Campbell also contends the evidence was insufficient to convict him of rape because it failed to prove the sexual intercourse was accomplished through force, threat, or intimidation.  He argues his confession merely established consensual sexual intercourse and, further, argues the corroborating evidence proved nothing more than sexual intercourse.  The Commonwealth contends Campbell's confession established that the sexual intercourse was accomplished by intimidation, force, or threat and that other evidence sufficiently corroborated the confession.

The indictment charged a crime under Code § 18.2-61.  This statute provides, in pertinent part, that "[i]f any person has sexual intercourse with a complaining witness . . . and such act is accomplished . . . against the complaining witness's will, by force, threat or intimidation of or against the complaining witness . . . he . . . shall be guilty of rape."  Defining these elements, the Supreme Court has explained that, "in the context of [a prosecution for] sexual crimes, an act undertaken against a victim's will and without the victim's consent is an act undertaken with force." Martin v. Commonwealth, 272 Va. 31, 35, 630 S.E.2d 291, 292 (2006).  In other words, one inquiry to be made "is whether the act or acts were effected with or without the victim's consent." Jones v. Commonwealth, 219 Va. 983, 986, 252 S.E.2d 370, 372 (1979).  The other elements are as follows:

> As used in the statute, threat means expression of an intention to do bodily harm.  Intimidation may occur without threats. Intimidation, as used in the statute, means putting a victim in fear of bodily harm by exercising such dominion and control of her as to overcome her mind and overbear her will.  Intimidation may be caused by the imposition of psychological pressure on one who,

- 6 -

under the circumstances, is vulnerable and susceptible to such pressure.

Sutton v. Commonwealth, 228 Va. 654, 663, 324 S.E.2d 665, 670 (1985).

It is well established that in a rape prosecution, as in every other criminal prosecution, "the Commonwealth must prove the element of corpus delicti, that is, the fact that the crime charged has been actually perpetrated." Cherrix v. Commonwealth, 257 Va. 292, 305, 513 S.E.2d 642, 651 (1999). The primary evidence in this prosecution was Campbell's extra judicial admissions to the police. In his recorded statements, Campbell gave a detailed description of his conduct with his teenage stepdaughter. Campbell asserts, however, he only acknowledged having sexual intercourse with the teenager. He argues "he did not state that he intimidated [her], that he forced [her] to have sex or that she did not consent to having sex with him." We believe the trial judge properly found that the statements, viewed in totality, established the statutory elements of rape.

The Supreme Court addressed the issue of intimidation in Commonwealth v. Bower, 264 Va. 41, 563 S.E.2d 737 (2002), where a parent sexually assaulted his thirteen-year-old daughter while she pretended to be asleep. The Court held the age of the child, the existence of a familial relationship, and the child's vulnerable position are relevant in determining whether the act occurred through intimidation. Id. at 45-46, 563 S.E.2d at 738-39. See also Clark v. Commonwealth, 30 Va. App. 406, 410-11, 517 S.E.2d 260, 262 (1999) (holding that the paternal relationship, the child's age, and the child's isolation, were factors to be considered in determining the existence of intimidation). In this case, the evidence proved Campbell contacted the teenager at her friend's house at 4:30 a.m. and told her to return home. He was angry with her and her mother, and he confronted the teenager when she arrived home. Focusing his anger on her, he directed her to remove her clothing. The trial judge found it "notable that this is a 14-year-old and a stepchild" and that Campbell was in "a position of trust" as her caretaker. The

trial judge also found that Campbell acknowledged in his statement that "steam [was] boiling over" as he angrily confronted the teenager.  Before or during the intercourse, Campbell told the teenager, "it was [her] fault."  This evidence supports the trial judge's conclusion that Campbell used intimidation to facilitate sexual intercourse with his teenage stepdaughter.

The evidence also proved Campbell was angry and displayed a knife when he ordered the teenager to disrobe.  Although Campbell argues he had the knife because he had earlier intended to cut his own wrist, the trial judge found that Campbell did not disclose that fact to the teenager. Thus, the trial judge could reasonably conclude that this aspect of Campbell's confession had "all of the indicia of [use of] force."

Additionally, the trial judge specifically noted Campbell said he "threatened [the teenager] and told her not to tell" of the incident.  These statements further support the trial judge's findings of intimidation and use of force.  We hold, therefore, the evidence supports the trial judge's finding that, fairly understood, Campbell's recorded statement was a full confession of rape.

We turn, then, to the question whether the confession was sufficiently corroborated to withstand Campbell's challenge to its sufficiency.  The Supreme Court succinctly stated the standard to be met when the Commonwealth's proof includes the defendant's confession of the crime.

> "Although the Commonwealth may not establish an essential element of a crime by the uncorroborated confession of the accused alone, "'only slight corroborative evidence'" is necessary to show the veracity of the confession.  Williams v. Commonwealth, 234 Va. 168, 175, 360 S.E.2d 361, 366 (1987) (quoting Clozza v. Commonwealth, 228 Va. 124, 133, 321 S.E.2d 273, 279 (1984), cert. denied, 469 U.S. 1230 (1985)), cert. denied, 484 U.S. 1020 (1988).  What is more, if '[t]his corroborating evidence is consistent with a reasonable inference' that the accused committed the crime to which he has confessed, the Commonwealth need not establish through direct evidence those elements of the crime that are proven by the confession.  See

Jackson v. Commonwealth, 255 Va. 625, 646, 499 S.E.2d 538, 551 (1998), cert. denied, 525 U.S. 1067 (1999)."

Winston v. Commonwealth, 268 Va. 564, 613, 604 S.E.2d 21, 48-49 (2004) (quoting Powell v. Commonwealth, 267 Va. 107, 145, 590 S.E.2d 537, 560 (2004)).

Independent of the confession, the evidence established that the teenager's grandmother took her to the hospital shortly after these events occurred. The teenager submitted to an examination at the hospital and to the collection of evidence for the PERK kit. The detective investigating the crime later seized from Campbell's bedroom in the residence the gel Campbell described as the lubricant he used. DNA testing revealed Campbell and the teenager had engaged in sexual intercourse. The evidence further proved Campbell, who acted as the teenager's caretaker while her mother was in Jamaica, fled to South Carolina after these events occurred.

The trial judge found that this evidence was corroborative of the confession because it proved the teenager "went to a hospital [and] submitted to a very invasive procedure." He also found that Campbell's flight from the state corroborated his confession of rape. We hold this evidence provided the basis for a reasonable inference that Campbell committed the crimes to which he confessed. See Winston, 268 Va. at 613, 604 S.E.2d at 49; see also Williams v. Commonwealth, 234 Va. 168, 175-76, 360 S.E.2d 361, 366 (1987) (holding the absence of a wallet in the pants of the deceased was sufficient to corroborate the accused's confession that he robbed the deceased); Swann v. Commonwealth, 247 Va. 222, 236, 441 S.E.2d 195, 205 (1994) (holding a robbery confession was corroborated by proof a decedent's "pants pockets were turned inside out and no money was found in his wallet"); Wright v. Commonwealth, 245 Va. 177, 194, 427 S.E.2d 379, 390 (1993) (holding the accused's confession of attempted rape was corroborated by proof the decedent's underpants had been removed and were found at the crime scene"), vacated on other grounds by Wright v. Virginia, 512 U.S. 1217 (1994).

For these reasons, we affirm the conviction.

Affirmed.