**STATE of Tennessee, Petitioner,**

v.

**Steve Edward FRIZZELL and Terry Eugene Frizzell, Respondents.**

Supreme Court of Tennessee.

July 26, 1976.

R. A. Ashley, Jr., Atty. Gen., Weldon B. White, Jr., Asst. Atty. Gen., Nashville, for petitioner.

Joel E. Pearman, Harriman, Billy H. Leffew, Rockwood, for respondents.

OPINION

FONES, Justice.

Defendants, Frizzell brothers, were convicted of murder in the first degree and sentenced to fifty (50) years in the penitentiary. They were jointly indicted and tried with Mark Allen Harvey. The Frizzell brothers gave police a joint statement exonerating themselves and accusing Harvey of killing the victim. Harvey gave a written statement to the police accusing the Frizzell brothers of killing the victim.

The trial judge allowed Harvey's statement to be read to the jury during the State's proof in chief over objection of defendants. Neither Harvey nor defendants offered any proof. Harvey moved for a directed verdict which was granted. The State then offered Harvey as a witness for the obvious purpose of curing a *Bruton* violation. Defendants objected and Harvey did not testify.

The Court of Criminal Appeals reversed the convictions of defendants, holding that the statement of Harvey was a violation of the rule of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

The State petitioned for the writ of certiorari insisting, among other things, that the *Bruton* violation was cured by the offer of Harvey as a witness; and by objecting to his being called, defendants waived the opportunity of a confrontation.

Defendants contend that the only basis for the directed verdict in favor of Harvey was that the trial judge believed Harvey's statement and did not believe the Frizzell brothers; that the adjudication was so devastating that the right of confrontation was destroyed.

The issue thus made prompted this Court to grant the writ of certiorari.

On the evening of February 18, 1974, Lewis Ladd, proprietor of Ladd's Place, a Roane County Beer Tavern, was shot and killed in an apparent armed robbery. The murder weapon was a .38 caliber revolver, one of two identical pistols purchased by defendants three days before the murder, which was later recovered by police from a Georgia pawnshop where it had been sold by defendants.

All three of the defendants below, the Frizzell brothers and Harvey, were at the scene at the time of the murder. They sped away from the tavern parking lot in a dark truck driven by Steve Frizzell. Defendants later took Harvey to his uncle's house; and they drove to Marietta, Georgia, where they parked the truck and embarked upon a cross country tour to Los Angeles and back to Marietta by way of bus, train, and hitchhiking. After returning to Marietta, defendants drove back to Tennessee in their truck and were arrested.

In their joint statement to police, defendants admitted to being at the scene of the shooting, but maintained that they remained in the truck while Harvey went in to buy some beer. They claim the first they knew about the shooting was when they heard shots being fired inside the tavern, and Harvey came out and said that he had " . . . just shot this old man and killed him."

Police then arrested Harvey, and he gave a completely different account of the shooting. According to him, he and the Frizzell brothers stopped at the tavern to get some beer; and both of the Frizzells went inside while he remained in the truck, the engine of which Steve Frizzell had left running. He then heard six (6) shots, and the Frizzells came running out. Harvey asked what happened and according to him, Terry Frizzell said, "I shot him." Steve Frizzell responded with, "That ain't my first one, but it is Terry's first one." According to Harvey, they both told him that they had killed the man. Harvey also said that after the shooting, Terry Frizzell emptied the spent shells out of his weapon and reloaded, while Steve Frizzell did not reload.

As stated by the Court of Criminal Appeals, this case presents a classic violation of the *Bruton* rule absent Harvey's appearance as a witness under circumstances providing defendants with the right to cross-examination.

After the trial judge granted Harvey's motion for acquittal, his statement took on far greater significance. It bore the stamp of approval of an impartial judge, one to whom jurors look for guidance. The jurors could only conclude that the judge believed Harvey's statement that he was innocent of murder and defendants were guilty. It is clear that this action of the trial judge was so prejudicial to defendants that cross examination of Harvey would have served only to emphasize the judge's approval of Harvey's version of the crime.

We hold that even though Harvey was available as a witness, there could have been no effective cross examination after the trial judge granted his motion for directed verdict.

Finally, the State contends that any violation of the *Bruton* rule can be overcome because the evidence against defendants is so overwhelming that the violation of that rule is harmless beyond a reasonable doubt. *E. g., Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Gwin v. State,* 523 S.W.2d 636, 688 (Tenn. Cr.App.1975).

In this case there was substantial circumstantial evidence implicating defendants, but it did not provide the missing link of who actually killed the victim. Defendants told police that Harvey shot him; Harvey told police that defendants shot him. The circumstantial evidence would support a verdict against Harvey if the jury believed the statement made by defendants.

The crucial factor in the minds of the jurors was the statement made by Harvey and approved by the trial judge. Harvey's statement, in addition to other circumstantial evidence, convicted defendants; and we cannot say that the unconstitutional admission of the Harvey statement was harmless error. The evidence here, without the co-defendants' statement, was not nearly as strong against defendants as was the evidence in *Gwin v. State, supra,* in which the defendant not only confessed to the shooting, but which also included the account of an eyewitness who saw the defendant shoot the victim.

The judgment of the Court of Criminal Appeals is affirmed, and the case is remanded to the Criminal Court of Roane County for a new trial.

COOPER, C. J., and HENRY and HARBISON, JJ., concur.

BROCK, J., dissents.

BROCK, Justice (dissenting).

I cannot agree with the conclusion that a violation of the rule stated in *Bruton v. U. S.,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) occurred in this case. That case merely holds that the introduction of a confession of a co-defendant which inculpates another defendant violates the right of confrontation of that other defendant if the confessing defendant is not available for cross-examination. If the defendant whose confession is introduced is made available as a witness subject to cross-examination by the other defendant, as was done in this case, there is no *Bruton* violation.

I would reverse the judgment of the Court of Criminal Appeals and affirm that of the trial court.